221 A.2d 615.

## FRANK R. CAMPBELL *vs.* MAX POLLACK *d.b.a.* MAX POLLACK AND COMPANY.

## FRANK R. CAMPBELL *vs.* NICOLA U. BILOTTI.

### JULY 21, 1966.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. These two actions in assumpsit were consolidated and heard by a justice of the superior court sitting without a jury. They are before us solely on the defendants' exceptions to the decision of the trial justice awarding the plaintiff in each case the sum of $8,240 plus interest.

The record shows that in 1963 and for some time prior thereto Providence Auto Magic Car Wash, Inc., a Rhode Island corporation, hereafter called Magic Car Wash, operated an automatic car wash, so called, on premises located on North Main street in Providence. Magic Car Wash was the assignee of a lessee's interest in an instrument covering these premises dated March 30, 1955. The original lessee had erected on this property a cinder block and frame building which housed the car wash. The lease provided that on its termination all buildings, structures and improvements would become the property of the lessors. Another provision of this lease stated that the lessors had a first and prior lien on all buildings, structures and improvements to secure payments of any obligations under the lease.

On April 1, 1961, Magic Car Wash executed and delivered to defendant Bilotti a chattel mortgage in the amount of $12,000 which by its terms purportedly covered the cinder block building and certain items of personal property. The mortgage contained a covenant that the mortgaged property was free and clear from any encumbrances "except the interest of lessors under lease dated March 30, 1955."

In 1963 apparently the magic disappeared from the car-washing business because Magic Car Wash went into receivership. The superior court by a decree dated De-

cember 9, 1963 entered in the receivership proceedings, authorized defendant Bilotti to foreclose his chattel mortgage and he was also given leave to become the purchaser at any foreclosure sale.

The defendant Bilotti then employed defendant Pollack as the auctioneer to conduct the mortgagee's sale. Pollack advertised in the Providence Journal the date, time and place of sale.

The auction with Pollack in charge was held on February 18, 1964. Attorneys representing the lessors appeared at the sale and both informed the auctioneer that anything being sold at the auction sale was subject to any interests that the lessors might have in the property pursuant to terms of the lease. An announcement to this effect was made by the auctioneer prior to the sale. The mortgaged property was bid in by an attorney representing defendant Bilotti for $6,500.

About a week after the foreclosure sale plaintiff contacted defendant Pollack and began negotiations for the sale of the car wash. Campbell is a resident of Pawtucket, Rhode Island, where he operates a garage in which he repairs automobiles. He testified that he met Pollack on the premises of the car wash and was told by him that everything within the four walls with the exception of a soft-drink machine was included in the sale.

The sale price was $8,000 and in addition to this the sum of $240 was added for the Rhode Island sales tax.

On March 10, 1964, Pollack delivered a bill of sale to Campbell. It read "Contents of Magic Car Wash * * * Price $8000.00 Sales Tax $240." On this date Campbell paid Pollack $1,000. Campbell then began preparations incidental to removing the car wash to his garage in Pawtucket. The bill of sale originally called for the removal of the contents of the car wash no later than "3/31/64." Because Campbell was experiencing difficulty

making the necessary arrangements for the move to Pawtucket, the figures 3 and 31 were scratched out of the bill of sale. He made two additional payments to Pollack. On March 16, 1964, he paid an additional $1,000 and on March 19, 1964, he made the final payment of $6,240. Upon the receipt of the final payment, Pollack delivered the keys to the premises to plaintiff. From this date until early April, plaintiff visited the premises about half a dozen times and on several occasions removed certain small articles to his garage in Pawtucket.

On April 9, 1964, Mr. Campbell's son went to the car wash with a moving man so that an estimate could be obtained as to the cost of moving the equipment. Upon his arrival at the North Main street location, Campbell's son was met by an attorney who in behalf of the lessors informed him that pursuant to the terms of the lease, the boiler, hot-air blowers and fluorescent lighting could not be removed from the premises. The attorney also told plaintiff's son that it was doubtful whether the conveyor chain, which moves a car through the washing process, could be removed. This chain was embedded in the floor of the building.

Thereupon plaintiff engaged the services of an attorney who on April 9, 1964, sent a letter to defendant Pollack rescinding the sale and demanding the return of the purchase price. The letter stated that plaintiff was rescinding the sale because, among other things, Pollack could not deliver the boiler, lights and the blowers. The plaintiff then returned to the premises certain small items which he had taken to Pawtucket.

This litigation then followed. It was stipulated at the trial that Pollack was acting as Bilotti's agent and all payments made to Pollack were delivered to Bilotti.

The defendants have briefed only their exception to the decision of the court in its award for plaintiff in each

case. This being so, all of defendants' other exceptions not being briefed or argued are deemed to be waived. *Dolman* v. *Saltzman*, 100 R. I. 327, 215 A.2d 232.

The defendants' first contention is that the trial justice should have classified the boiler, hot-air blowers and lights as *equipment* and not as *improvements*. This being the true nature of these items, they contend, title to them did not pass to the lessors pursuant to the terms of the lease. Accordingly, they say, the bill of sale conveyed to plaintiff good title to these specific items.

The trial justice in his decision found that the boiler, blowers and light fixtures which were chattels before their annexation had become an integral part of the building. The boiler was used to heat the premises. In his decision the trial justice likened the blowers to radiators. He stated that they were quite necessary in distributing the heat throughout the premises. He found, therefore, that all of these items should be classified as improvements. After an examination of the transcript and the superior court's decision in this case, we are satisfied that these items were properly classified as improvements and not equipment under the provisions of the lease.

The term "improvements" as used in the instant lease means a chattel which by the manner of affixation to the real estate is so changed in character that it cannot be removed without the consent of the landlord.

In support of this contention that the property in question was equipment, defendants directed our attention to the case of *339-41 Market Street Corp.* v. *Darling Stores Corp.*, 355 Pa. 312, where the court held that an air conditioner was not an improvement as that term was used in the lease and hence it could be removed from the premises by the lessee. The factual situation there is quite different from the one presented here to the trial justice. The air conditioner was found to be resting by

gravity alone on a foundation especially made for it. It was not connected to the real estate and was readily removable. In our case, the trial justice found that the items had become an "integral part" of the premises to such a degree as to be part of the building.

The defendants then unsheathed another legal arrow in the attempt to puncture plaintiff's cause. If the breach is material, they say, plaintiff cannot recover because he did not execute an unequivocal tender back as provided in *Cruickshank* v. *Griswold,* 81 R. I. 468. There the suit involved a rescission of the sale of real estate. This court held that to effectuate the rescission, the plaintiffs had to tender to the seller a deed of the property. We held there that a letter sent to the seller stating that a deed would be tendered upon payment of a certain sum was an insufficient tender on behalf of the buyers. The defendants here point to *Cruickshank* as a basis for denying recovery to plaintiff.

The facts in this case are quite different from those in *Cruickshank.* Here the seller had obtained permission from the court to take possession of the personal property at the car wash for the purpose of foreclosing the mortage. The buyer here was given permission by the seller to remove the items from the North Main street property. The premises did not belong to the buyer and whatever rights the buyer had in removal were those the buyer obtained from seller. He had not removed items to his own place of business in Pawtucket and then failed to return them to the seller. Here these goods were at the same location they were at the time of the sale. It would be difficult indeed to determine where else plaintiff, the buyer, could have returned the articles in question. We believe that in the facts of this case the buyer has complied with any requirements of a tender back as referred to in *Cruickshank.*

This transaction between plaintiff and defendants is governed by the uniform commercial code, G. L. 1956, title 6A (P. L. 1960, chap. 147). The defendants, however, maintain that despite the enactment of the code, the law of rescission is unchanged.

The keystone of chap. 6A-2 of the code is its delineation of the rights and obligations of the buyer and of the seller. A reading of it shows that the framers of this portion of the code studiously avoid any mention of the terms "recission" and "substantial breach." Instead §6A-2-601 (see appendix) speaks of rejection and §6A-2-608 (see appendix) uses the phrase "Revocation of acceptance." The language in these two sections shows in our opinion that the buyer is relieved of his obligations under the former law of rescission to tender back. It is enough under the code if the buyer seasonably notifies the seller. *Marks* v. *Lehigh Brickface, Inc.*, 19 Pa. D. & C. 2d 666, 672. It is evident that the strict requirements of rescission and tender back have been modified by the adoption of the uniform commercial code in Rhode Island.

In his decision, the trial justice granted relief to plaintiff on the basis of §6A-2-601 but pointed out, however, that if plaintiff's action in going to the building and removing certain items between March 19, 1964 and April 9, 1964 be deemed an acceptance of the goods, plaintiff should still be given relief.

It is our belief that plaintiff did by his actions prior to April 9, 1964 accept the goods. Not only did he remove some items, but as near as possible under the circumstances he exercised dominion over the items in the building.

We believe that a reasonable opportunity for plaintiff to reject the goods had expired. It follows therefore that he comes within the framework of §6A-2-608(1)(b). While defendants allege that "non-conformity" as used in

§§6A-2-601 and 6A-2-608 applies only to quantity and quality of goods, this is not so. Section 6A-2-106(2) states that goods conform to the contract when they are in accordance with the obligations of the contract. The warranty of title is one of those obligations. The assurance by Pollack that plaintiff was to have everything within the four walls certainly places this transaction within the purview of §6A-2-608(1)(b).

The defendants contest with vigor the trial justice's findings that the failure to deliver the boiler, blowers and lights was a substantial breach of the contract. They point out that at the trial the total value of these items was given as $650. When this figure is contrasted with the sales price of $8,000, they say, it is so disproportionate as to be insignificant.

While defendants use the term substantial breach, an examination of §6A-2-608 shows no such phrase. The words of the section are "substantially impair its value to him * * *." We will use these words and point out that the mathematical legerdemain of defendants is not the basis for a determination as to whether the seller's nonconformity has substantially impaired the buyer's purchase. The car-wash business of today is no longer the warmweather week-end endeavor it was years ago. The proliferation of car-wash stands which one observes throughout our communities is the best witness to the fact that the car-wash business is a year-round activity. Heat and adequate lighting play an important part in the efficient operation of any such enterprise. A car-wash establishment in the middle of winter in Rhode Island without heat and light would be a strange place indeed. Here plaintiff expected to obtain everything within the four walls of the building and this he did not receive. The superior court's finding that the inclusion of these articles was a sufficiently important part of the entire

sale as to make the omission material was well warranted. Implicit in this finding was the fact that their omission substantially impaired the value of the sale to the buyer.

The letter of April 9, 1964, complied with the provision of notice required by §6A-2-608. The plaintiff returned whatever items he had taken. Having availed himself of the provisions of §6A-2-608, he is entitled to relief under the code.

Whatever rights asserted by the plaintiff in this matter arise from the provisions of the uniform commercial code. His right to recover is by the terms of the code limited to those he has against the seller. Nothing in the provisions of the code and the circumstances of this case provides for recovery against the seller's agent. A similar situation was present in *Grandi* v. *LeSage,* 74 N.M. 799. This was a suit by a buyer against a seller and his agent. There the court ordered judgment entered for the defendant agent for the reasons we have just stated.

The exception of the defendant Pollack to the decision is sustained. The plaintiff may appear before us on October 3, 1966 to show cause, if any he has, why this case should not be remitted to the superior court for an entry of judgment for the defendant Pollack.

The defendant Bilotti's exception to the decision is overruled and this case is remitted to the superior court for entry of judgment on the decision.

## APPENDIX

§6A-2-601. Buyer's rights on improper delivery.

Subject to the provisions of this chapter on breach in installment contracts (sec. 6A-2-612) and unless otherwise agreed under the sections on contractual limitations of remedy (secs. 6A-2-718 and 6A-2-719), if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may

(a) reject the whole; or

(b) accept the whole; or

(c) accept any commercial unit or units and reject the rest.

§6A-2-608. Revocation of acceptance in whole or in part.

(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

(b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

*Francis R. Foley,* for plaintiff.

*A. Norman LaSalle,* for defendants.