**372 A.2d 69.**

GEORGE BERGENSTOCK *vs.* LEMAY'S G.M.C., INC.

APRIL 14, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. This case was tried before a justice of the Superior Court and a jury. The jury returned a verdict in the plaintiff's favor in the amount of $12,100.85, whereupon the trial justice directed a verdict in favor of the defendant. The case is before us on the plaintiff's appeal from the judgment entered on the directed verdict, the defendant having waived its cross-appeal during oral argument before this court.

In March of 1970, plaintiff retired from the United States Navy after nearly 20 years of service. While in the Navy, he had been involved in operating and maintaining heavy equipment and had taught these skills to younger

Navy personnel. After his discharge, plaintiff had trouble finding steady employment to help him feed and support his wife and five young children so, in late 1970, he struck upon the idea of utilizing his heavy equipment skills to go into business for himself as a trucking subcontractor. After making inquiries about purchasing a truck tractor, plaintiff was referred to Subler Transfer, Inc. (Subler) of Versailles, Ohio. The plaintiff thereupon filed an application for employment with Subler and the latter responded that plaintiff's acceptance into Subler's employ was contingent upon his meeting the requirements of the United States Department of Transportation and the Interstate Commerce Commission and his obtaining a truck tractor which met certain specifications. Among those specifications was that the truck could be no older than 1968 vintage, that is, 3 years old or newer. In late March 1971, with the advice of a representative of the Service Corps of Retired Executives (SCORE) and with a secured loan from the Small Business Administration (SBA), plaintiff negotiated the purchase from defendant of a truck which was represented by the latter to have been manufactured in 1967 or 1968. The amount of the loan from SBA was $18,000, of which $12,100.85 was applied to the purchase of the truck. The truck was registered on April 1, 1971, and on April 2 or 3, plaintiff drove the truck to Versailles, Ohio, so that it could be inspected by Subler and so that he could attend a 3-day instruction program.

After plaintiff corrected several minor defects that had been detected during Subler's inspection, the truck tractor was approved and the employment contract was executed. The plaintiff almost immediately commenced hauling freight for Subler but it was not long before he began experiencing a series of mechanical failures with the truck tractor. In mid-April a fan hub became dislodged and the fan flew through the truck's radiator. During a single

week in early May, the truck's generator-starter and clutch required repairs which were performed by defendant's mechanics. All of the repairs to this time had cost plaintiff an estimated $800. After several trips to the Chicago area, the truck suffered a loss of braking power to the trailer in mid-June, whereupon plaintiff returned to Rhode Island and informed the SBA, who held a security interest in the truck, that he no longer wanted the truck because it cost him "too much money to keep it going." He was instructed to deliver the truck to a local auctioneer who was to conduct a forced liquidation auction of the truck on behalf of the SBA. On July 10, 1971, the truck was sold at auction for $5,600, from which the SBA grossed $4,905, and thus there remained a balance due on the loan to plaintiff of $10,603.48.

Sometime prior to this date, plaintiff became aware that the truck had been manufactured in 1966 and not in 1968 as he had previously believed. Upon making this discovery, plaintiff obtained legal counsel and tendered notice to defendant that he was returning the truck tractor and demanding the return of the purchase price and other costs. No amicable settlement of the dispute could be agreed upon and the truck was disposed of at the auction described above.

On August 25, 1971, plaintiff filed a complaint which alleged in three counts (1) that plaintiff had effectively revoked his acceptance of the truck and was entitled to return of the purchase price, (2) that, in representing the truck to be a 1968 model, when in fact it was a 1966, defendant had made and breached an express warranty, and (3) that defendant had been unjustly enriched. In each of the first two counts, plaintiff demanded actual damages of $12,100 and consequential damages in the amount of $10,000. In the third count, he demanded $12,100. The case was tried before a justice of the Superior Court sitting

with a jury in December of 1974. At the close of all the evidence, defendant's counsel moved for directed verdicts on all three counts. Ruling that plaintiff had failed to present any probative evidence as to the difference in value between a 1968 and a 1966 truck and that because the measure of damages under G.L. 1956 (1969 Reenactment) §6A-2-714(2) is "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted," the trial justice directed a verdict in defendant's favor on that count of the complaint which sounded in breach of express warranty. He also ruled that, for the same reasons, that is, that there was no probative evidence of damages, defendant was entitled to a directed verdict on the charge of unjust enrichment as well. The trial justice, invoking the terms of Super. R. Civ. P 50(b), reserved decision on the motion as it applied to the count of the complaint alleging revocation of acceptance.

The case was submitted to the jury solely on the theory of revocation of acceptance under §6A-2-608 and a verdict was returned in plaintiff's favor in the amount of $12,100.85. At that point, the trial justice entertained arguments from counsel on the reserved motion after which he decided to direct a verdict in favor of defendant on that count as well. The case is now before us on plaintiff's appeal from the judgments entered on the directed verdicts as to the claims that defendant braeched an express warranty and that plaintiff revoked his acceptance of the truck.

I

It should be noted at the outset that plaintiff's arguments on appeal that defendant breached implied warranties of merchantability, §6A-2-314, or fitness for a particular purpose, §6A-2-315, are not well-taken. It is clear

from the record that not only was neither of these thories of recovery pleaded but that neither was the object of plaintiff's proof at trial. Since plaintiff failed to properly raise these theories at the trial level of this proceeding, we will not consider them on appeal.

## II

We turn now to plaintiff's argument that he had effectively revoked his acceptance of the truck tractor and was thereby entitled to a return of the purchase price.

The conditions under which a buyer may revoke his acceptance of goods are set forth with some specificity in §6A-2-608. That section of the Uniform Commercial Code is set forth in full in the margin,[1] but insofar as it applies to this case we need only note here that plaintiff's acceptance of this truck may be revoked only if the truck suffers from a nonconformity which "substantially impairs its value to him." Section 6A-2-608(1). Since the trial jus-

---

[1]G.L. 1956 (1969 Reenactment) §6A-2-608 reads as follows:

"Revocation of acceptance in whole or in part.—(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

"(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

"(b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the grounds for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

For good summaries of the stautory requirements to effect a valid revocation of acceptance, reference is hereby made to *Lynx, Inc.* v. *Ordnance Prods., Inc.*, 273 Md. 1, 14-17, 327 A.2d 502, 512-14 (1974) and Whaley, *Tender, Acceptance, Rejection and Revocation—the UCC's "TARR"-Baby*, 24 Drake L. Rev. 52, 70-72 (1974).

tice directed the verdict on this count of the complaint solely on the ground that plaintiff had failed to establish the existence of this degree of nonconformity, we presume that all other requisites of §6A-2-608 have been satisfied.

The plaintiff argues, in essence, that the nonconformity of the truck sold to him by defendant lies in the fact that it was a 1966 vintage truck and not a 1968. He argues further that, because §6A-2-608 requires a showing of substantial impairment of value *to the buyer,* the seriousness of the nonconformity is to be measured in each case against a particular buyer's particular needs. The plaintiff concludes that, because he has shown that defendant was aware of Subler's requirement that plaintiff obtain a 1968 or newer truck, the fact that this truck was a 1966 was such a nonconformity as would substantially impair the truck's value *to him.* It is his position therefore that there was sufficient evidence in the record to support the jury's conclusion that the difference in model years constituted grounds for a valid revocation of acceptance and therefore that the trial justice erred in directing a verdict to the contrary.

In considering this claim, we note initially that whether a particular nonconformity substantially impairs the value of a contract to the buyer is a factual consideration and thus is properly left for the jury. Whaley, *Tender, Acceptance, Rejection and Revocation — the UCC's "TARR"-Baby,* 24 Drake L. Rev. 52, 75 (1974); *Hays Merchandise, Inc.* v. *Dewey,* 78 Wash.2d 343, 347, 474 P.2d 270, 272 (1970) [citing *Campbell* v. *Pollack,* 101 R.I. 223, 221 A.2d 615 (1966)]. It also seems a sound proposition that in determining the existence of a substantial nonconformity, the trier of fact should reach its conclusion as an objective factual determination of a particular buyer's particular needs. *Hays Merchandise, Inc.* v. *Dewey, supra* at 347, 474 P.2d at 272. *See* White &

Summers, *Handbook of the Law under the Uniform Commercial Code* at 260 (1972). Although it has been held that this standard imports more than a buyer's right to conformity of quantity and quality, *Campbell* v. *Pollack, supra* at 230-31, 221 A.2d at 619, and that impairment of value may be substantial though the cost of curing the defect may be minimal, *Jorgensen* v. *Pressnall,* 274 Ore. 285, 290-91, 545 P.2d 1382, 1385 (1976), it has also been held that every minor breach of warranty does not give rise to a right to revoke acceptance. Every case must be carefully examined on its own merits to determine whether a nonconformity is substantial. *Tiger Motor Co.* v. *McMurtry,* 284 Ala. 283, 292, 224 So.2d 638, 646 (1969). Furthermore, the fact that the "substantial impairment" test is framed by §6A-2-608 in terms of the value of the goods to the individual buyer cannot be seized upon as an excuse to relieve the buyer of his rightful burden of proof in these situations.

The case of *Axion Corp.* v. *G.D.C. Leasing Corp.,* 359 Mass. 474, 269 N.E.2d 664 (1971), is instructive on the issue of the defendant's burden of proof. That case involved cross actions which arose from the sale of three valve testing machines. The machines were intended to improve the buyer's productivity and extensive testing was conducted on the first machine before modified specifications were submitted to the seller for implementation in the construction of the second and third machines. After the buyer had paid for the first and second machines, testing continued on the third machine and the buyer ultimately refused to pay for that machine unless it would meet a "plus or minus five per cent" specification. The seller agreed and took back the machine in order to attempt to perfect it. Several months later, the buyer's agents tested the machine and pronounced it unacceptable whereupon the buyer refused to pay for it. The seller

brought two actions of contract for failure to pay and the buyer brought an action for breach of warranties. At the close of all the evidence the trial justice allowed the seller's motions for directed verdicts in all three actions. After first ruling that the buyer had accepted the machine in question, the Supreme Judicial Court went on to consider whether the buyer had met its burden of establishing that the failure to meet the "plus or minus five per cent" specification constituted a substantial impairment of value within the meaning of §6A-2-608. The court recited some conflicting testimony regarding the significance of the specification but went on to say:

> "[W]e are not directed to any testimony showing how and to what extent failure to meet the specification impaired the value of the machine. There was vague testimony that a valve set too low might become a nuisance and indirectly might bear on safety, and that if set too high a valve might fail to function as a safety device to protect water heaters; but there was no showing of the bearing of the particular specification on these possibilities or on the manufacture or marketing of valves. On this issue the buyer had the burden of proof, and it failed to sustain that burden." *Id.* at 480-81, 269 N.E.2d at 668.

On this basis, the buyer's exception to the directed verdict on the claim of revocation of acceptance was overruled.

Turning to the present case, the trial justice directed a verdict on this issue on two separable yet interrelated grounds. First, he noted that the only nonconformity which plaintiff alleged was that the truck which defendant sold to him was a 1966 and not a 1967 or 1968 model. The only record evidence of damage resulting to plaintiff was that the truck had broken down on several occasions and had cost plaintiff certain sums of money in repair costs and arguably in lost profits. The trial justice observed in this regard that there was no evidence to support even the inference that these breakdowns were

linked to the vintage of the truck, or, stated otherwise, that they occurred because the truck was a 1966 model and would not have occurred if it were a 1968. He therefore directed the verdict in favor of defendant notwithstanding the jury's verdict to the contrary.

Secondly, the trial justice noted that there was no evidence to support a conclusion that the vintage of the truck in any way affected the working agreement that plaintiff had with Subler. The sole significance of the several model years derives from their relation to the requisites that Subler had set forth as preconditions of plaintiff's employment. That is, it was stipulated by Subler that, if plaintiff wanted to go to work, he would first have to obtain a truck no more than 3 years old. It would appear, therefore, that in this respect plaintiff's burden of proof would be to show that having delivered a 1966 instead of a 1967 or 1968 truck to plaintiff, defendant somehow impaired or undermined plaintiff's attempt to enter into an employment contract with Subler. There was obviously no impairment of plaintiff's employability because, after inspecting the truck, Subler, in fact, hired plaintiff as a trucking contractor. The trial justice, therefore, ruled that plaintiff had failed to sustain his burden.

In ruling on a motion for a directed verdict the trial justice must view all the evidence in the light most favorable to the adverse party, draw all reasonable inferences from the evidence favorable to that party and refrain from weighing the evidence and passing upon the credibility of witnesses. If, after taking such a view, the trial justice concludes that there exist issues upon which reasonable men might draw conflicting conclusions, the motion should be denied. *Ballet Fabrics, Inc.* v. *Four Dee Realty Co.*, 112 R.I. 612, 618, 314 A.2d 1, 4-5 (1974). In light of the foregoing considerations and in view of the state of the evidence in this case, we believe the trial

justice correctly decided that reasonable men could only conclude that plaintiff had failed to prove that the difference in age of the truck substantially impaired its value to him within the contemplation of §6A-2-608. *See Campbell* v. *Pollack, supra* at 230-32, 221 A.2d at 618-19.

### III

The only remaining issue is whether the trial justice committed reversible error in granting defendant's motion for a directed verdict on the count of the complaint which alleged breach of express warranty. Although the exact thrust of plaintiff's argument as it relates to this grievance is not clear from the briefs, it appears that he is claiming here that there was an express warranty made by defendant to plaintiff that the truck sold was a 1968 model. Additionally, he seems to be arguing that he has proved that as a result of the breach of that warranty he has suffered actual and incidental damages by proving the cost to repair the truck and consequential damages by proving that as a result of the mechanical failure he lost certain amounts of salary and profits.

We note at the outset that the trial justice's decision on the motion does not state or even imply that there was not an express warranty made by defendant to plaintiff regarding the model year of the truck. We shall therefore presume, without deciding the merits of the issue, the existence of an express warranty created either by "affirmation of fact," §6A-2-313(1)(a), or by "description of the goods," §6A-2-313(1)(b).

The only question remaining therefore is whether plaintiff has successfully proven the damages which have befallen him as a result of the breach of the express warranty. The trial justice ruled in deciding this issue that because defendant had expressly warranted only the year of the vehicle, plaintiff's burden of proof as to his actual

damages was to offer evidence showing the difference in value between a 1966 and a 1968 vehicle. That is, he ruled that plaintiff must comport with §6A-2-714 which measures damages for breach of warranty as "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." In granting the directed verdict, the trial justice held that the only evidence of the value of the truck as accepted was that it drew a top bid of $5,600 at the liquidation sale. The trial justice opined that this sum represents an amount obtained as the result of a forced sale and thus is not probative of actual value.

We are unable to sustain the trial justice's decision to direct a verdict in this regard.

In situations such as this, it is incumbent upon this court to view the evidence in the light most favorable to the appealing party and to give that party the benefit of all reasonable and legitimate inferences to be drawn therefrom. *Salk* v. *Alpine Ski Shop, Inc.*, 115 R.I. 309, 311-12, 342 A.2d 622, 625 (1975). In view of the great deference given to the party seeking reversal or vacation of a lower court judgment or verdict, we must, in this case, give plaintiff the benefit of every inference that can reasonably be drawn with respect to the issue of his damages. In this light, we feel that the trial justice did not give Mr. Bergenstock the benefit of every inference that could be derived from the evidence that the truck drew a bid of $5,600 at the auctioneer's sale. Merely because it was a forced sale does not preclude an inference that the amount received approximated fair value. In short, this amount represents some evidence of the truck as accepted, and as such, constituted ample basis for the submission of the issue of express warranty to the jury. Section 6A-2-714.

We therefore hold that the trial justice erred in directing a verdict in defendant's favor on the second court of plaintiff's complaint and thus withholding this part of plaintiff's case from the jury. The plaintiff is therefore entitled to a new trial on that count of his complaint.

The plaintiff maintains further with regard to this aspect of the litigation that the trial justice should have submitted the issue of consequential damages to the jury. In making this argument, plaintiff cites the existence of record evidence which tends to show that he incurred certain expenses and lost profits as a consequence of defendant's breach of express warranty. We note at this juncture that, in directing the verdict on this count of the complaint, the trial justice cited only the supposed lack of proof as to actual damages and overlooked plaintiff's proof of consequential damages. We decline to infer whether the trial justice entertained any doubts or formulated any conclusions with regard to the latter and therefore leave plaintiff to his proof of damages in all respects upon retrial. Section 6A-2-715(2).

The plaintiff's appeal from the directed verdicts as to counts one and three, that is, revocation of acceptance and unjust enrichment, is denied and dismissed, the judgment appealed from insofar as it concerns these counts is affirmed. The plaintiff's appeal from the directed verdict as to count two, that is, breach of express warranty is sustained, the judgment appealed from is vacated, and the case is remanded for a new trial on this count only.

*James P. Flynn,* for plaintiff.

*John D. Lynch,* for defendant.