531 So.2d 1202 (1988)
GUERDON INDUSTRIES, INC.
v.
John B. GENTRY.
No. 57896.
Supreme Court of Mississippi.
August 31, 1988.
Rehearing Denied November 2, 1988.
*1203 Thomas J. Lowe, Jr., Jackson, for appellant.
J. Andrew Phelps, Hattiesburg, for appellee.
Before DAN M. LEE, P.J., and PRATHER and ROBERTSON, JJ.
PRATHER, Justice, for the Court:
The primary issue in this appeal addresses the revocation of previously accepted goods under the Uniform Commercial Code. A purchaser of a new mobile home, Mary Dell Gentry, brought this suit in the Circuit Court of Simpson County against the retail seller, Wood Mobile Homes, (Wood), and Guerdon Industries, Inc. (Guerdon), the manufacturer, alleging breach of an express warranty and an implied warranty of merchantability covering the mobile home. From a jury award favoring the plaintiff, and against the manufacturer alone, awarding $30,000.00 in actual damages and $2,500.00 in attorney's fees, later changed by the trial court to $17,112.00 and $4,000.00, respectively, the defendants perfect this appeal and assign as error the following:
(1) The circuit court erred in failing to direct a verdict for the appellant, Guerdon Industries, Inc. in that the plaintiff failed to make out a prima facie case for breach of express or implied warranties.
(2) The damages of $30,000.00, remitted to $17,112.00, amounted to an improper rescission of the sale. The proper remedy should have been measured as the cost to repair, since rescission of the sale was never requested by the plaintiff.
(3) There was no evidence that punitive damages were allowable and the granting of a punitive damages instruction was error in that it improperly led the jury to believe that the appellant Guerdon was liable for compensatory damages.
(4) The awarding of attorney's fees was improper since the plaintiff should not have prevailed.

STATEMENT OF FACTS
In June, 1984, Mary Dell Gentry (hereinafter "Mrs. Gentry"), the original plaintiff in this case, began searching for a mobile home to purchase after her original home was consumed by fire. She was aided in this search by her son, John B. Gentry (hereinafter "Gentry") who later substituted into the case as plaintiff after his mother's death on March 15, 1985.
On June 18, 1984, John Gentry purchased a mobile home for his mother that was manufactured by the defendant Guerdon Industries and sold by Wood Mobile Homes of Magee, Mississippi. Gentry paid $17,112.00 for the mobile home. The mobile home was delivered to the lot in Mize, Mississippi where Mrs. Gentry's original home had stood. Gentry had filled in a "twenty foot" area with dirt on the site where the mobile home was to stand; in some places the dirt was four feet deep.
Within a week of delivery, problems began developing with the home. Lonnie Wood, the dealer, testified that he had four "major" repairs taken care of during the first week, namely, to repair the dishwasher, the heating unit, the washing machine, and a water leak. According to Wood, Mrs. Gentry never made any further complaints about those four items.
The Gentrys also were dissatisfied with the leveling job done on the mobile home. The home was initially leveled on June 23, 1984, and Mrs. Gentry signed a work order indicating that the work had been done satisfactorily. The home was releveled and preblocked on September 20; Mrs. Gentry signed another work order indicating satisfaction with the work done.
The Gentrys were also dissatisfied with the fact that Wood did not promptly install the smokestack for the fireplace. However, *1204 Gentry admitted on cross-examination that the smokestack was installed before the weather got cold enough to need the fireplace.
Over the five-month period between the purchase of the mobile home in June, 1984 and the filing of the lawsuit in November, 1984, Wood made approximately ten trips to the mobile home to repair defects pursuant to the express warranty provided by Guerdon. The Gentrys were not totally satisfied with the repairs made by Wood, the local retailer, and contacted Guerdon, the manufacturer, in July about making repairs; Wood contacted Guerdon during July about making repairs as well. Wood expressed some dissatisfaction at the fact that Guerdon employees actually came to the mobile home for the first time to make repairs in September; however Lonnie Wood also stated that a week to two months was the typical range for how long it had taken Guerdon to make repairs in the past.
On August 23, 1984, the Gentrys had J.B. Black of the State Fire Marshall's office make an inspection of the mobile home for defects. In his report Black listed twenty-seven items that needed repair. At trial, Black was called as an expert witness for the Gentrys. He testified that twenty-seven defects in a mobile home was an "average" number and classified the defects as "minor". He also testified that the home met all fire and safety standards, was not in violation of any U.S. Housing and Urban Development regulations, and in his opinion, was in merchantable condition.
Apparently in response to this report, Guerdon employees came to Mize on September 20 from Waycross, Georgia, a distance of approximately 500 miles, to make repairs. Of the twenty-seven items to be repaired, Guerdon repaired approximately twenty of them on this trip, and each item was initialed by Mrs. Gentry as "repaired." Guerdon repaired seven remaining items on November 13, the day the suit was filed, again with Mrs. Gentry's approval.
As noted earlier, the Gentrys filed suit on November 13, 1984 in the Circuit Court of Simpson County, basing their complaint on the list of defects noted in Mr. Black's report. At trial, Gentry reiterated many of the facts noted here. His testimony was corroborated by his wife, Mary Katherine Gentry, his aunt, Betty Jean Hall, and Betty Jean Robertson, a friend of Mrs. Gentry. At the close of the plaintiff's case, both Guerdon and Wood moved for a directed verdict, which was eventually denied.
The trial court judge attempted to facilitate a form of settlement by allowing the defendants to make any necessary repairs on the mobile home. Gentry refused this offer. The defendants offered no proof, and the case proceeded to the jury.
The jury awarded the Gentrys $30,000.00 in actual damages, to which the judge added $2,500.00 in attorney's fees. Although instructed on the issue, the jury gave no punitive damage award. The trial court later remitted the damages award to $17,112.00 and increased the award of attorney's fees to $4,000.00.
In this case, Gentry's complaint was based on alternative theories of recovery, namely, alleged violations of an express warranty provided by Guerdon, another warranty issued by the U.S. Department of Housing and Urban Development (HUD) obligating the manufacturer to take certain corrective actions in the event of non-conformity, and violations of the implied warranty of merchantability, which attaches to goods under Article 2 of the Uniform Commercial Code and under the United States Magnuson-Moss Warranty Act. Attorney's fees were also asked for under authority of the federal act, together with an award of punitive damages for the defendants alleged willful refusal to repair.
The case was submitted to the jury under a theory of failure to repair and replace defective parts of the goods sold within a reasonable time after request was made, entitling the plaintiff to a return of the purchase price and other consequential damages. In the language of the Uniform Commercial Code, the plaintiff seeks a revocation of acceptance of the goods under Miss. Code Ann. § 75-2-608.

*1205 I.

SHOULD THE APPELLANT'S MOTION FOR A DIRECTED VERDICT HAVE BEEN GRANTED BECAUSE THE APPELLEE FAILED TO MAKE A PRIMA FACIE CASE FOR BREACH OF EXPRESS OR IMPLIED WARRANTIES?

A. Standard of Review
When an appellate court examines a trial court's decision regarding a motion for directed verdict, it must do so with great care. It is a well-established rule that when a trial court, or the Supreme Court in this case, considers such a motion, it must do so "in the light most favorable to the party opposed to the motion." White v. Hancock Bank, 477 So.2d 265, 269 (Miss. 1985). See also, Weems v. American Security Insurance Co., 450 So.2d 431, 435 (Miss. 1984). The non-movant must also be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point so overwhelmingly in favor of the defendant (movant) that reasonable men and women could not have arrived at a verdict for the plaintiff (non-movant), granting the motion is required. The burden on the movant in such cases is great, for if there is "substantial" evidence opposed to the motion, which would allow reasonable and fair-minded men and women to reach differing conclusions, the motion must be denied. White, supra, Stubblefield v. Jesco, Inc., 464 So.2d 47, 54 (Miss. 1984).
These principles are found throughout Mississippi case law, including, but not limited to, Fitzner Pontiac-Buick-Cadillac v. Smith, 523 So.2d 324, 326 (Miss. 1988); McGaugh v. Gray, 495 So.2d 1024, 1025 (Miss. 1986); Rester v. Morrow, 491 So.2d 204, 211 (Miss. 1986); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975). To reach a conclusion in the present case, it is necessary to look closely at the facts of this case to see how they compare with prior case law and any relevant statutory provisions. Each theory of plaintiff's claim to recovery will be dealt with in turn.

B. The Express Warranty
As part of the sale of each mobile home it manufactured, Guerdon supplied an express limited warranty. The warranty covered any defects in material and workmanship for a one-year period, with no charge for parts and labor. Complaints about the mobile home were to be directed initially to the retail dealer, in this case, Wood Mobile Homes, in Magee. If these efforts to remedy the problem were unsuccessful, then Guerdon was to be contacted.
The warranty issued by HUD also obligates the manufacturer in much the same manner as Guerdon's own warranty. It requires the manufacturer to take "appropriate corrective action" for nonconformities occurring within one year of the home's purchase by a consumer.
The area of express warranty law is governed by the Magnuson-Moss Warranty  Federal Trade Commission Improvement Act, 15 U.S.C.A. §§ 2301-2312 (1982) (hereinafter the "Magnuson-Moss Act") and various provisions of the Uniform Commercial Code, as codified under Mississippi law. The most prominent of these provisions is Miss. Code Ann. § 75-2-313 (1972), which specifically addresses express warranties.
The "threshold" provision of the Magnuson-Moss Act is § 2303, which distinguishes between the requirements for "full" and "limited" written warranties. A merchant is not required to give such warranties at all, but if he does so, certain requirements must be met. A "full" warranty must comply with certain minimum standards in § 2304 for remedying non-conforming goods. A "limited" warranty under § 2303 is not subject to these requirements, but is prohibited from disclaiming implied warranties for the duration of the "limited" warranty. 15 U.S.C.A. § 2308. Gorman v. Saf-T-Mate, Inc., 513 F. Supp. 1028, 1031 (N.D.Ind. 1981). Beck Enterprises, Inc. v. Hester, 512 So.2d 672, 676 (Miss. 1987), Miss. Code Ann. § 75-2-719(4). The record clearly shows that the warranty supplied by Guerdon was a limited one.
Miss. Code Ann. § 75-2-317 addresses cumulation and conflict of warranty issues *1206 and emphasizes "the intention of the parties" when deciding which warranty should control. It is not necessary for this Court to resolve any possible discrepancies between the Guerdon and HUD warranties since Mr. Black of the Fire Marshall's office testified that no HUD regulations had been violated. As a consequence, the Guerdon warranty serves as the controlling express warranty in this case. The behavior of the parties in this case also indicates that they considered the Guerdon warranty to be the primary guide for dispute resolution.

C. Implied Warranty of Merchantability
The second prong of the Gentrys' theory of recovery is the implied warranty of merchantability, as found in the Uniform Commercial Code (UCC). The relevant portion of Mississippi law is Miss. Code Ann. § 75-2-314 (1972).
§ 75-2-314(1) provides that:
(1) A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section, the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
(2) Goods to be merchantable must be at least such as ...
(c) Are fit for the ordinary purposes for which such goods are used.
In the context of mobile home sales, this surely means that a mobile home must be "habitable," that is, permitting the inhabitants to live free of serious defects to health and safety. The Gentrys maintain that Guerdon's actions violated the provisions of § 75-2-314.
There is no dispute of the fact that Mrs. Gentry had accepted the mobile home. Miss. Code Ann. § 75-2-601(b) (1972). Fitzner Pontiac-Buick-Cadillac, Inc. v. Smith, 523 So.2d 324, 327 (Miss. 1988); Rester v. Morrow, 491 So.2d 204, 209 (Miss. 1986). However, as in Fitzner, supra, Rester, supra, and J.L. Teel Co. v. Houston United Sales, 491 So.2d 851, 860 (Miss. 1986) a buyer's acceptance of goods may be predicated upon the fact that discovery of such defects prior to acceptance is difficult. Miss. Code Ann. § 75-2-606(1)(b) (1972).
Having accepted the goods, the mobile home in this case, the buyer may revoke his acceptance of goods under § 75-2-608, which provides:
Revocation of acceptance in whole or in part.
(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it
(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
(b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.
Under the Code, a purchaser's acceptance of goods may be revoked only if the goods contain a non-conformity which "substantially impairs its [their] value to him," Miss. Code Ann. 75-2-608(1), and must occur within a reasonable time after discovery of the grounds for revocation. Miss. Code Ann. § 75-2-608(2).
This case is similar to Byron v. Gerring Industries, Inc., 328 N.W.2d 819 (N.D. 1982). In Byron, the buyer sued to revoke acceptance of his mobile home, alleging breach of express and implied warranties. Both the trial court and the Supreme Court of North Dakota held in favor of the manufacturer. Id. Specifically, the trial court found many of the alleged defects to be "cosmetic" in nature and thus "insubstantial in nature." Id. at 822.
*1207 A comparison with the facts of Fedders Corp. v. Boatwright, 493 So.2d 301 (Miss. 1986), in which the implied warranty of merchantability was violated, is helpful. In Fedders, supra, the buyers had purchased a heat pump from the Fedders Corporation. Problems with the pump began in the summer of 1977, and continued through April, 1980. Id. at 303-4. Repairs were attempted almost twenty times, Id. at 304 and the attorney for the buyer corresponded with Fedders for two years as well, all to no avail. Id. at 304-6 Due to the nature of the defects and inability to satisfactorily repair the heat pump, this Court found a violation of the implied warranty of merchantability.

D. Analysis
At trial in this case the plaintiffs offered the following proof of substantial impairment. Lonnie Wood, called as an adverse witness, testified at trial that several "major" problems with the mobile home were repaired within the first week of occupancy. This involved repairs to the dishwasher, the heating unit, the washing machine and fixing a water leak. He further testified that Mrs. Gentry never complained about those items again.
The other "major" defect appears to have been the need to relevel the home. The Gentrys listed this item as Number 9 on their list of defects in the complaint. This problem was undoubtedly magnified by the fact that Gentry covered the area where the original house had burned with a "20 foot" area of dirt that was four feet deep in certain places. This was done before the mobile home was installed. Nonetheless, Wood leveled the home to Mrs. Gentry's satisfaction on June 23. It was releveled and preblocked on September 21 and approved by Mrs. Gentry.
At trial Gentry called J.B. Black of the State Fire Marshall's office as an expert witness. Black testified that the 27 defects listed on his report (which formed the basis of the Gentrys' complaint) was not an excessive amount, and he classified these defects as "minor" in nature.
Black also testified that the home met the standards for fire safety as promulgated by his office and that he considered the home to be habitable. As to HUD regulations, Black testified that the mobile home violated no HUD regulations of any kind.
Lonnie Wood also testified at trial that he considered the mobile home to be fit for habitation. Gentry himself also testified at trial that the home was fit for human habitation.
Gentry became dissatisfied with the delay in making repairs. He told both Wood and Guerdon that he wanted the trailer repaired or his money refunded. Evidently Gentry sought legal advice prior to Guerdon's return to the trailer for repair. The facts establish that the very day the lawsuit here was filed that Guerdon's employees arrived at the trailer to make repairs.
Although Gentry testified that the trailer was habitable, he also testified to what he considered to be a breach of warranty, or in the words of the UCC, to nonconformity which substantially impaired the value of the contract to his mother. That impairment primarily concerned damage to the floors. Gentry complained of weakness of the floors in the bedroom, dining room, and kitchen and of the floors "giving" when his mother walked across them. Mrs. Gentry lived in the home for four or five months until "they" cut the sheetrock. According to Gentry, his mother got "tired of having problems" with the mobile home and "it hurt her to breathe in there."
The weakness in the floor of the trailer was also verified by testimony of other family members. One witness testified to being scared to walk on the kitchen floor and of the bedroom floor falling through.
It must be noted however, that before a buyer (Gentry) has a right to revoke acceptance for defects such as those outlined here, he must afford the seller (Guerdon) a reasonable opportunity to cure them. Miss. Code Ann. § 75-2-508. In Fitzner, supra, a car buyer attempted to revoke his acceptance of the automobile without allowing the merchant a reasonable opportunity to cure. The Court held that: "Assuming arguendo that Smith had grounds *1208 for revocation of his acceptance, Smith nevertheless had a duty to afford Fitzner a reasonable opportunity to cure the automobile's ills. Such opportunity for cure was a legal requisite of Smith's right of recovery." Id. at 328.
The seller's right to cure is not unlimited however. There comes a time "when enough is enough" and a purchaser is entitled to seek revocation "notwithstanding the seller's repeated good faith efforts ..." Rester, supra at 210. The facts of this case reveal conflicting evidence as to whether the Gentrys justifiably revoked acceptance of the mobile home in the face of Guerdon's efforts to cure any defects.
In considering a claim of this nature, the issue of "whether a particular nonconformity substantially impairs the value of a contract to the buyer is a factual consideration and thus is properly left for the jury." Bergenstock v. LeMay's G.M.C. Inc., 118 R.I. 75, 372 A.2d 69 (1977); Whaley, Tender, Acceptance, Rejection and Revocation  the UCC's "TARR" Baby, 24 Drake L.Rev. 52, 75 (1974).
As noted in the Bergenstock case, the factfinder should consider the following:
It also seems a sound proposition that in determining the existence of a substantial nonconformity, the trier of fact should reach its conclusion as an objective factual determination of a particular buyer's particular needs. Hays Merchandise, Inc. v. Dewey, supra, 78 Wash.2d at 347, 474 P.2d [270] at 272 [(1970)]. See White & Summers, Handbook of the Law under the Uniform Commercial Code at 260 (1972). Although it has been held that this standard imports more than a buyer's right to conformity of quantity and quality, Campbell v. Pollack, supra, 101 R.I. [223] at 230-31, 221 A.2d [615] at 619 [(1966)], and that impairment of value may be substantial though the cost of curing the defect may be minimal, Jorgensen v. Pressnall, 274 Or. 285, 290, 291, 545 P.2d 1382, 1385 (1976), it has also been held that every minor breach of warranty does not give rise to a right to revoke acceptance. Every case must be carefully examined on its own merits to determine whether a nonconformity is substantial. Tiger Motor Co. v. McMurtry, 284 Ala. 283, 292, 224 So.2d 638, 646 (1969). Furthermore, the fact that the "substantial impairment" test is framed by § 6A-2-608 in terms of the value of the goods to the individual buyer cannot be seized upon as an excuse to relieve the buyer of his rightful burden of proof in these situations.
(Emphasis added). Id. 372 A.2d at 73.
The initial part of this opinion noted the proper standard of review when a defendant moves for a directed verdict at the end of the plaintiff's case. In this case the jury served as factfinder regarding the Gentrys' right to revoke acceptance. Their finding, though based on conflicting evidence, is supported by the record. They found a substantial impairment existed of Mrs. Gentry's particular needs under the UCC. Applying this evidence in the light most favorable to the party opposing the motion, (Gentry) and drawing all reasonable inferences from the evidence to that party, where the trial judge concluded that reasonable jurors might draw conflicting conclusions, the motion for a directed verdict was properly denied. This Court concludes that the trial judge acted properly in submitting this issue to the jury.

II.

WAS THE DAMAGES AWARD OF $30,000.00 REMITTED TO $17,112.00, PROPER?
In the Gentrys' complaint, they requested actual damages in the amount of $30,000.00, $250,000.00 in punitive damages, and attorney's fees. The jury awarded $30,000.00 in actual damages and awarded no punitive damages. On the hearing of the motion for a new trial, the trial judge remitted the damages award to $17,112.00.
Confirmation of this principle can be found in Anderson, Uniform Commercial Code, 3rd Ed., Vol. IV, § 2-714:15: "The damage which a buyer recovers for breach of warranty as distinct from incidental *1209 and consequential damages, cannot exceed the price of the goods." In Interrogatory No. 3, the Gentrys base their $30,000.00 claim on the purchase price and also "anxiety, mental duress, hardship and inconvenience caused by the negligence and bad faith of Guerdon Enterprises, Inc." Other than proof of the purchase price, there is no proof in the record regarding these other damages. Bare allegations will not suffice in asserting damages claims. In Fedders, supra, consequential damages were shown by the necessity of purchasing a wood stove and two kerosene heaters to compensate for the defective heat pump. Id. at 304. In the case at bar, no proof of consequential damages was introduced. Thus, the Gentrys would be limited to recovery of the purchase price of their mobile home. The trial judge properly remitted the damages to $17,112.00, the price of the mobile home.

III.

WAS THE PUNITIVE DAMAGES INSTRUCTION IMPROPER?
In Fedders Corp. v. Boatwright, 493 So.2d 301 (Miss. 1986), also involving a breach of express and implied warranties claim on consumer goods, a punitive damages instruction was given, and the jury awarded punitive damages in the amount of $20,000. Id. at 306. This Court reversed that award, holding that there was no evidence of any conduct justifying the award of punitive damages. Id. at 312.
This Court agrees with the appellant here that there was no evidence of conduct in the instant case that would justify the granting of an instruction on punitive damages. However, the granting of punitive damages instructions are discretionary with the judge, and since no punitive damages were actually awarded, this Court holds that Guerdon was not harmed by the granting of such an instruction.

IV.

WAS THE AWARDING OF ATTORNEY'S FEES TO GENTRY IMPROPER?
Attorney's fees were assessed in the amount of $2,500.00 by the trial court judge pursuant to the Magnuson-Moss Warranty Act, § 2310(d)(2) and were subsequently increased to $4,000.00.
§ 2310(d)(2) of the Magnuson-Moss Warranty Act authorizes the awarding of attorney's fees to prevailing plaintiffs at the discretion of the trial judge, which act provides:
(d)(1) Subject to subsections (a)(3) and (e) of this section, a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief 
(A) in any court of competent jurisdiction in any State or the District of Columbia; or
(B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection.
(2) If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.
(3) No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection 
(A) if the amount in controversy of any individual claim is less than the sum or value of $25;
(B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or
(C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.
*1210 The written warranty provided by Guerdon warranted against defects in "material and workmanship." The damages suffered by the Gentrys, including but not limited to, the problems with the carpet, loose wall paneling, and the weakness of the floor reveal defects of this very nature. As a consequence, there also existed a breach of the implied warranty of merchantability, because the mobile home was eventually rendered uninhabitable.
Therefore, attorney's fees could have been properly assessed under the Magnuson-Moss Act for the failure of either the express or implied warranties. § 2310(d)(1). In this case, the trial judge acted in a manner that was entirely consistent with the language of the Magnuson-Moss Act. The awarding of attorney's fees under the Federal legislation is a purely discretionary measure left to the trial judge. We find nothing in the record to indicate an abuse of this discretion.
This Court declines to review the propriety of the amount of attorney's fees actually awarded in this case because the appellant failed to challenge the fee calculations used at the trial level as an assignment of error. This Court therefore concludes that the decision to award attorney's fees to the appellants in this state court action was done in a manner consistent with governing statutory law and should therefore be upheld.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, GRIFFIN and ZUCCARO, JJ., concur.
ANDERSON, J., not participating.