Robert BYRON, Plaintiff and Appellant,

v.

GERRING INDUSTRIES, INC., Pierce Mobile Home Sales, Inc., a/k/a Pierce Trailer Sales, Inc., and Metropolitan Federal Savings and Loan Association, Defendants and Appellees.

Civ. No. 10223.

Supreme Court of North Dakota.

Dec. 30, 1982.

Stefanson, Landberg & Alm, Moorhead, for plaintiff and appellant; argued by Randolph E. Stefanson, Moorhead.

Conmy, Feste & Bossart, Fargo, for defendant and appellee Gerring Industries, Inc.; argued by Wickham Corwin, Fargo.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for defendant and appellee Pierce Mobile Home Sales, Inc.; no appearance.

Nilles, Hansen, Selbo, Magill & Davies, Fargo, for defendant and appellee Metropolitan Federal Savings and Loan Association; no appearance.

ERICKSTAD, Chief Justice.

Plaintiff/Appellant, Robert Byron, appeals from a judgment of the District Court of Cass County precluding him from revoking acceptance of a mobile home. We affirm.

On May 30, 1978, Byron contracted to purchase a 1978 Holly Park Mobile Home from the defendant, Pierce Mobile Home Sales, Inc., a/k/a Pierce Trailer Sales, Inc.[1]

---

1. Co-defendant, Metropolitan Federal Savings and Loan Association, financed Byron's purchase of this home for the sum of $26,137.20.

This home was manufactured by co-defendant, Gerring Industries, Inc. Approximately six and one-half months later, on January 22, 1979, Byron notified the respective defendants that he was revoking acceptance of the mobile home in question on the basis that its value was substantially impaired.[2] In the ensuing bench trial, Byron contended that a substantial impairment existed due to both cosmetic and structural defects. Nevertheless, the trial court specifically found that the value of the mobile home was not substantially impaired because: (1) the cosmetic defects were not of a substantial nature; and (2) the home was not structurally defective for three reasons: first, it was in compliance with the applicable H.U.D. regulations; second, it was constructed in accordance with generally accepted engineering practices; and, third, it had sufficient structural strength under both stationary and transit positions.

We have said that a finding concerning substantial impairment or the lack thereof is a question of fact. *Erling v. Homera, Inc.,* 298 N.W.2d 478, 481 (N.D.1980). Hence, on appeal, Byron urges us to set aside the trial court's findings of fact with regard to substantial impairment on the basis that such findings are clearly erroneous. Rule 52(a), N.D.R.Civ.P.

■ The legal principles governing Rule 52(a)'s application are not in dispute and thus can be briefly summarized. A finding is clearly erroneous only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Wilhelm v. Berger,* 297 N.W.2d 776, 779 (N.D.1980); *Alumni Association of University v. Hart Agency, Inc.,* 283 N.W.2d 119, 121 (N.D.1979); *Schmidt v. Plains Elec., Inc.,* 281 N.W.2d 794, 798 (N.D.1979); *In re Estate of Elmer,* 210 N.W.2d 815, 820 (N.D. 1973). That we may have viewed the facts differently if we had been the initial trier of the case does not entitle us to reverse the lower court. *United States v. National Ass'n of Real Estate Boards,* 339 U.S. 485, 495–96, 70 S.Ct. 711, 717, 94 L.Ed. 1007 (1950); *Nee v. Linwood Securities Co.,* 174 F.2d 434, 437 (8th Cir.1949); *Schmidt v. Plains Elec., Inc., supra,* 281 N.W.2d at 798; *In re Estate of Elmer, supra,* 210 N.W.2d at 820. Our function is not to decide factual issues de novo. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969); *In re Estate of Elmer, supra,* 210 N.W.2d at 820.

■ The complaining party bears the burden of demonstrating that error exists in the trial court's findings of fact.[3] *Friedman v. Fordyce Concrete, Inc.,* 362 F.2d 386, 387 (8th Cir.1966); *Montgomery Ward and Company v. Steele,* 352 F.2d 822, 826 (8th Cir.1965); *Warnecke v. McDonald Construction Co.,* 323 F.2d 715, 716 (8th Cir.1963). The burden assumed by the party attempting to show such mistake is especially strong where, as in this instance, the find-

---

**2.** Byron was revoking his acceptance pursuant to Section 41–02–71, N.D.C.C., which reads as follows:

"*41–02–71. (2–608) Revocation of acceptance in whole or in part.*—1. The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it
a. on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
b. without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
2. Revocation of acceptance must occur within a reasonable time after the buyer dis-

covers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
3. A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

**3.** Rule 52 was adopted from Rule 52 of the Federal Rules of Civil Procedure; therefore, when construing it, we are guided by and give great deference to any Federal case law interpreting Rule 52 of the Federal Rules of Civil Procedure. *See In re Estate of Elmer,* 210 N.W.2d 815, 820 (N.D.1973).

ings are primarily based upon oral testimony and the trial judge has viewed the demeanor and judged the credibility of the witnesses. *Bryan v. Kershaw,* 366 F.2d 497, 499 (5th Cir.1966), *cert. denied* 386 U.S. 959, 87 S.Ct. 1030, 18 L.Ed.2d 108 (1967). The rule that questions of credibility are for the trial court also applies to the evaluation of expert witness testimony. *Graver Tank and Mfg. Co. v. Linde Air Products Co.,* 336 U.S. 271, 274, 69 S.Ct. 535, 537, 93 L.Ed. 672 (1949); *Molitor v. American President Lines, Ltd.,* 343 F.2d 217, 221 (9th Cir.1965); *United States ex rel. Carter-Schneider-Nelson, Inc. v. Campbell,* 293 F.2d 816, 822 (9th Cir.1961), *cert. denied* 368 U.S. 987, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962); 9 Wright and Miller, Federal Practice and Procedure, § 2586, p. 736–40 (1970).

In the case at bar, the record is replete with expert witness testimony concerning the structural adequacy of this mobile home. The plaintiff's expert, Dr. Jorgenson, testified that the home was structurally inadequate as every significant structural member was overstressed to some extent and, in addition, the home was not in compliance with the applicable H.U.D. regulations. His testimony was contradicted by the defendants' expert, Dr. Tompos, who unequivocally stated that the home was structurally adequate and in compliance with the requisite H.U.D. regulations.[4]

▪ The trial court was thus confronted with a classic "battle of the experts". Consequently, this is a case where the court could have arguably relied upon either party's expert witness. However, upon hearing the testimony, observing the witnesses' demeanor, and judging their credibility, the court chose to rely upon the defendants' expert. Such a choice between two permissible views of the weight of the evidence is not clearly erroneous. *U.S. v. Yellow Cab Co.,* 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94

L.Ed. 150 (1949); *In re Estate of Elmer, supra,* 210 N.W.2d at 820.

In oral argument, counsel for Byron conceded that in order for Byron to prevail on appeal with regard to the issue of substantial impairment, we must determine that the trial court was clearly erroneous in relying upon the defendants' expert. Therefore, we will only briefly consider whether or not the court was clearly erroneous in finding that the cosmetic defects were insubstantial in nature and thus did not substantially impair the home's value.

In this case, the trial court conducted a personal inspection of Byron's mobile home from which he concluded that several of the alleged cosmetic defects were either unnoticeable or due to the home's unblocked condition. For example, the alleged flaws in the wooden fireplace mantel and in the refrigerator door panel were invisible unless such fixtures were viewed from a specific angle under optimal lighting; the scratches complained of were undetectable; the screws securing the shelf in the entryway closet were not uneven as asserted; and, in addition, by blocking the mobile home, the existing misalignments in the door frames would be cured.

Prior to inspecting the mobile home, the trial court had an opportunity to hear testimony regarding the alleged cosmetic defects and to judge the respective witnesses' credibility. On cross-examination, Byron conceded that the alleged dents in both the mantel and refrigerator door were virtually undetectable. Byron also stated that, with the exception of the back ordered materials, any and all of his complaints prior to November 16 were promptly and adequately remedied. The general manager of Gerring's factory testified that the remainder of Byron's complaints could be easily cured in less than 12 hours at an estimated cost of less than $900;[5] Gerring did not have an

---

4. The disparity in opinion [expert witness] is due to the different analytical approaches utilized by the two experts. Contrary to Dr. Jorgenson's viewpoint, Dr. Tompos believed that the side walls and the particle board floor added significant strength to the structure, and thus should be considered in analyzing the structural adequacy of the mobile home.

5. The defects to be cured at the time of Byron's revocation of acceptance, and the respective cost of curing such conditions, are as follows: (1) replacement and installation of new kitchen

opportunity to cure these defects prior to Byron's revocation of acceptance.

Viewing the premises unquestionably aided the court in determining the significance and, in some instances, even the existence of the home's cosmetic defects. "... a view by the trial judge ... provides one more reason (in addition to his opportunity to observe the demeanor of the witnesses) why we should give great weight to the findings of the trial court." *Dobler v. Malloy,* 214 N.W.2d 510, 515 (N.D.1973). Being cognizant of the fact that the trial court had an opportunity to judge the witnesses' credibility and to view the premises, and finding significant and convincing evidence to support the trial court's findings upon scrutinizing the record, we are satisfied that the trial court's findings of fact with regard to the cosmetic defects are not clearly erroneous.

■ Byron further contends that he is entitled to recover damages under the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (Magnuson-Moss Act) on the basis that Gerring breached both the implied warranties of merchantability and of fitness for a particular purpose and also the express warranty which accompanied the home.[6] 15 U.S.C. § 2301–2312 (1975). However, an action for damages cannot be pursued under the Magnuson-Moss Act "... unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply." 15 U.S.C. § 2310(e).

In this instance, upon hearing the testimony and judging the witnesses' credibility, the trial court made two pertinent findings of fact: first, that Gerring and Pierce had promptly cured in a satisfactory manner any and all defects reported by Byron prior to November 16, 1978, and, secondly, that Pierce and Gerring did not have a reasonable opportunity to cure the defects urged by Byron subsequent to that date. On appeal, Byron contends that these factual determinations are clearly erroneous.

Conflicting evidence was presented on this issue. Nevertheless, where the record contains ample evidence to support such findings, and the findings of fact indicate that the court also considered the interests of the witnesses, we conclude that the trial court's findings of fact were not clearly erroneous.

■ Byron's final contention on appeal is that the trial court abused its discretion with regard to the amount of expert witness fees taxed and allowed in Gerring's favor.[7] The trial court awarded expert witness fees for trial preparation in the sum of $2,134 and further awarded expert witness fees and expenses for the four-day trial period plus an additional day of preparation in the sum of $1,750.

In *Peterson v. Hart,* 278 N.W.2d 133, 137 (N.D.1979), we said that "the amount of

---

linoleum ($160); (2) replacement of living room drapes ($187.25); (3) replacement of living room chair ($195.05); (4) replacement of mattress in the master bedroom ($48.72); (5) replacement of the refrigerator door panel ($50); (6) miscellaneous repair work ($200).

6. The mobile home in question was covered by a one-year written warranty which provided for the following:

"If any part of your new Gerring Industries' product fails because of a manufacturing defect within one year from original delivery by an authorized dealer of Mobile Home Serial No. M60–5087 it will be repaired without charge for either parts or labor."

7. The expert witness fees were taxed pursuant to Section 28–26–06, N.D.C.C., which reads in pertinent part:

"28–26–06. *Disbursements taxed in judgment.* In all actions and special proceedings, the clerk must tax as a part of the judgment in favor of the prevailing party his necessary disbursements as follows:

*    *    *    *    *    *

5. The fees of expert witnesses. Such fees shall be reasonable fees as determined by the court, plus his actual expense. The following shall nevertheless be in the sole discretion of the trial court:

a. The number of expert witnesses who shall be allowed fees or expenses;

b. The amount of fees to be paid such allowed expert witnesses, including an amount for time expended in preparation for trial; and

c. The amount of costs for actual expenses to be paid such allowed expert witnesses."

fees to be paid to an expert must be left to the sound discretion of the trial court." Where the expert witness testimony dominates the trial and the case's outcome was to a large extent contingent upon such testimony, we find no basis for determining that the trial court abused its discretion with regard to the fees for trial preparation. We also believe that it was essential for the defendants' expert to be present for portions of the trial in addition to the time during which he was actually testifying so that he could listen to, and subsequently counter, the testimony proffered by plaintiff's expert witness and also aid counsel in understanding the expert witness testimony. Accordingly, we find no abuse of discretion in this instance.

Therefore, we hereby affirm the judgment, including the award of expert witness fees and costs.

VANDE WALLE, SAND, PAULSON and PEDERSON, JJ., concur.