MILBANK MUTUAL INSURANCE
COMPANY, Plaintiff and
Appellee,

v.

DAIRYLAND INSURANCE COMPANY,
Garry Hagstrom and Sylvia Sabot, Individually and as Personal Representative of the Estate of Robert Sabot, deceased, Defendants and Appellants.

Civ. No. 10846.

Supreme Court of North Dakota.

Sept. 4, 1985.

which the district court determined that Dairyland had an obligation of coverage and a duty to defend under an automobile insurance policy issued by it to Garry Hagstrom and that Milbank Mutual Insurance Company [Milbank] did not have an obligation of coverage or duty to defend under a farm owners—ranch owners policy issued by it to Hagstrom. We affirm.

Robert Sabot was allegedly injured in an accident on Hagstrom's farm near Wilton, North Dakota, on October 15, 1980. The accident occurred when Hagstrom was unloading hay bales from his 2½-ton Ford truck to feed his cattle and one of the hay bales fell off the truck and struck Sabot. In order to feed the cattle, Hagstrom used his 2½-ton Ford truck to haul four 1500-pound cylindrical-shaped hay bales to a field where the cattle were pastured. The truck had a twenty-foot grain box with four-foot sides. Three bales were loaded in the box of the truck and the fourth bale was loaded on top of and in between two of the lower bales. The tailgate of the truck was removed to haul the bales, and a rope was tied at the back of the truck to keep the bales from falling out the back.

When Sabot arrived at Hagstrom's farm, Hagstrom was preparing to feed the cattle, and Hagstrom requested Sabot to help him. The extent of Hagstrom's request for Sabot's help is unclear. Hagstrom's deposition reflects that the fields were muddy and he asked Sabot to follow him in a four-wheel drive pickup in the event the truck became stuck. A statement by Sabot reflects that he was asked by Hagstrom to help move some equipment and feed some cattle.

In any event, Hagstrom drove the 2½-ton truck and Sabot drove Hagstrom's four-wheel drive pickup to the field where the hay bales were to be unloaded. When they arrived at the field, both Sabot and Hagstrom got out of the respective vehicles. Hagstrom's deposition reflects that he untied the rope at the back of the truck; however, a statement given by him after the accident reflects that Sabot untied the rope. Hagstrom returned to the truck and,

---

Zuger & Bucklin, Bismarck, for plaintiff and appellee; argued by Thomas O. Smith, Bismarck.

O'Grady, Morley & Morley, Grand Forks, for defendant and appellant Dairyland Insurance Company; argued by Michael J. Morley, Grand Forks.

ERICKSTAD, Chief Justice.

Dairyland Insurance Company [Dairyland] appeals from a summary judgment entered in a declaratory judgment action in

as he raised the hoist, he looked in the rear view mirror and saw that the top bale had fallen off the side of the truck and had struck Sabot. There is no dispute that, at the time of the accident, Hagstrom was unloading the bales from the truck.

At the time of the accident, Dairyland had issued an automobile insurance policy to Hagstrom which named the 2½-ton Ford truck as the insured vehicle, and Milbank had issued a farm owners—ranch owners insurance policy to Hagstrom.

As a result of the accident, Sabot allegedly suffered severe injuries to his head and back, including a broken back, a broken right leg, an injury to his bladder, and internal injuries. Sabot ultimately died of leukemia in 1981 and not from the alleged injuries sustained from the accident. Sabot's surviving spouse, Sylvia, initiated a negligence action, individually and as a personal representative of Sabot's estate, against Hagstrom to recover damages for Sabot's alleged injuries. Both Milbank and Dairyland denied an obligation to provide coverage or a defense because of the terms of their respective policies. However, Milbank undertook the defense of Hagstrom under a reservation of rights agreement.

Thereafter, Milbank commenced the instant declaratory judgment[1] action against Dairyland, Hagstrom, Sylvia Sabot, and Sabot's estate seeking a declaration of its rights and obligations under its policy and a declaration of the rights and obligations of Dairyland under its policy. The parties submitted the case to the district court on cross-motions for summary judgment. The district court concluded that Milbank had no obligation of coverage or duty to defend Hagstrom in the underlying tort action, and that Dairyland had a duty of defense and coverage under the terms of its policy. Judgment was entered accordingly and Dairyland, Hagstrom and Sylvia Sabot, individually and as personal representative of Robert Sabot's estate, appealed.[2]

■ The issues presented in this case must be resolved within the context of a motion for summary judgment. Summary judgment is a procedural device available for the prompt and expeditious disposition of a controversy without a trial if there is no dispute as to either the material facts or the inferences to be drawn from undisputed facts, or if only a question of law is involved. *Herman v. Magnuson*, 277 N.W.2d 445 (N.D.1979). If different factual inferences may be drawn, they must be drawn in favor of the party opposing the motion for summary judgment. *Sigurdson v. Lahr & Lahr, Inc.*, 299 N.W.2d 792 (N.D.1980).

Dairyland's policy issued to Hagstrom promised to pay damages for bodily injury for which the law held him responsible because of a "car accident" involving the 2½-ton Ford truck. The Dairyland policy defines car accident as "an unexpected and unintended event that causes bodily injury or property damage and arises out of the ownership, maintenance or use of a car or other motor vehicle." However, Dairyland's policy does not define the phrase "arises out of the ownership, maintenance or use of a car or motor vehicle." Dairyland contends that, in the absence of a definition for that term in its policy, Section 26–41–03(11), N.D.C.C., must be read into the policy and that, based on that statute, the district court erred in concluding that Dairyland must provide coverage and de-

---

**1.** Section 32–23–06, N.D.C.C., provides:

"*32–23–06. Entering of declaratory judgment discretionary with court—Exception.* The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding. However, the court shall render or enter a declaratory judgment or decree in an action brought by or against an insurance company to deter-

mine liability of the insurance company to the insured to defend, or duty to defend, although the insured's liability for the loss may not have been determined."

**2.** Before oral argument, the parties stipulated to dismiss with prejudice the appeal of Sylvia Sabot, individually and as personal representative of the estate of Robert Sabot. Hagstrom has not appeared in this appeal.

fense to Hagstrom under its automobile liability insurance policy.

Section 26–41–03(11), N.D.C.C., provides as follows:

"*As used in this chapter*, the following definitions shall apply:

 \* \* \* \* \* \*

"(11) 'Operation of a motor vehicle' means operation, maintenance, or use of a motor vehicle as a vehicle. *Operation of a motor vehicle does not include* conduct within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles unless the injury occurs off the business premises, or *conduct in the course of loading and unloading the vehicle unless the injury occurs while occupying it.*" [Emphasis added.]

Dairyland contends that the undisputed facts establish that the accident occurred while Hagstrom and Sabot were unloading the 2½-ton Ford truck and that, therefore, the accident did not occur during the "operation of a motor vehicle" as that term is defined in Section 26–41–03(11), N.D.C.C.

Milbank contends that Section 26–41–03(11), N.D.C.C., does not apply to this case because that chapter relates to automobile no-fault insurance and the provisions of that chapter are not, as a matter of law, applicable to the liability provisions of an automobile insurance policy.

Dairyland cites several authorities for the proposition that statutory provisions and definitions must be read into its automobile insurance policy and that, therefore, Section 26–41–03(11), N.D.C.C., must be read into its policy. See 7 Am.Jur.2d, *Automobile Insurance*, § 4 (1980); 7 Blashfield Automobile Law and Practice, § 292.9 (1966); 12 Couch on Insurance 2d, § 45:13 (1981).

We have reviewed the authorities relied upon by Dairyland and the cases cited therein and we do not believe those authorities mandate the incorporation of Section 26–41–03(11), N.D.C.C., into Dairyland's policy. Initially, we note that these authorities reflect that the particular statutory provisions must be applicable to the insurance policy in order to be incorporated into the policy. 7 Am.Jur.2d, *Automobile Insurance*, § 4 (1980). These authorities further reflect that whether or not a statutory provision is incorporated into an insurance policy depends on the intent of the legislature as ascertained from the language of the statute or applicable public policy. See *Wildman v. Government Employee's Insurance Co.*, 48 Cal.2d 31, 307 P.2d 359 (1957) [provisions of vehicle code set forth public policy of state and were intended by legislature to be a part of every motor vehicle liability insurance policy]; *Taub v. Motor Vehicle Accident Indemnification Corp.*, 31 A.D.2d 378, 298 N.Y.S.2d 212 (1969) [by terms of statute automobile insurers were mandated to include provisions in policy to give protection in situations enumerated in statute]; *Galkin v. Lincoln Mutual Casualty Co.*, 279 Mich. 327, 272 N.W. 694 (1937) [Mandatory statutory provisions of insurance law should be read into insurance contract]; *Crisp v. State Farm Mutual Automobile Insurance Co.*, 256 N.C. 408, 124 S.E.2d 149 (1962) [If statute is applicable to insurance policy, the provisions of the statute are incorporated into the policy]. Thus, we must initially look to the statutory language and public policy to ascertain whether or not Section 26–41–03(11), N.D.C.C., may be incorporated into Dairyland's policy.

 In resolving this question of statutory construction, our duty is to ascertain the intent of the Legislature. *State v. Moore*, 286 N.W.2d 274 (N.D.1979), *cert. denied*, 446 U.S. 943, 100 S.Ct. 2170, 64 L.Ed.2d 799 (1980). The Legislature's intent must be sought initially from the language of the statute. *Morton County v. Henke*, 308 N.W.2d 372 (N.D.1981). If a statute is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit because the Legislative intent is presumed clear from the face of the statute. Section 1–02–05, N.D.C.C.; *County of Stutsman v. State Historical Society of North Dakota*, 371 N.W.2d 321 (N.D.1985). However, if

the language of a statute is ambiguous or of doubtful meaning, the court may resort to extrinsic aids to interpret the statute. *Morton County v. Henke, supra.*

In North Dakota, every motor vehicle liability insurance policy is required to have uninsured motorist coverage (Section 26–02–42, N.D.C.C.), liability coverage (Section 39–08–20, N.D.C.C.), and no-fault benefits (Section 26–41–04(1), N.D.C.C.). Chapter 26–41, N.D.C.C., contains North Dakota's version of mandatory no-fault insurance. The introductory sentence of Section 26–41–03, N.D.C.C., unambiguously limits the terms in that section by stating "as used in this chapter." The terms in Section 26–41–03, N.D.C.C., describe and are applicable to the circumstances which trigger the minimum coverage necessary to comply with the no-fault benefits and are distinct and separate from automobile liability coverage. Nothing in Chapter 26–41, N.D.C.C., or any other statutory provision mandates that the terms in Section 26–41–03, N.D.C.C., be incorporated into the provisions of an insurance contract relating to motor vehicle liability insurance and uninsured motorist coverage. An insurance contract may incorporate those terms for the liability portion of its policy. However, we do not believe the language of Chapter 26–41, N.D.C.C., makes those terms mandatory for the liability part of an insurance policy. Although some sections in Chapter 26–41, N.D.C.C., refer to liability insurance,[3] we do not believe those references mandate that the terms in Section 26–41–03, N.D.C.C., are applicable to determining whether or not an insured's liability insurance covers an accident.

Neither do we believe there is a public policy which necessitates incorporation of that provision into the part of a policy dealing with liability insurance. Compare *Richard v. Fliflet,* 370 N.W.2d 528 (N.D. 1985). In *Richard v. Fliflet, supra,* there was a public policy of protecting innocent victims of motor vehicle accidents which required incorporation of a statutory provision preventing rescission of an insurance policy into policies purchased to avoid the sanctions of Section 39–16–05, N.D.C.C. No such compelling public policy has been called to our attention in this case.

■ We believe the term "operation of a motor vehicle" as defined in Section 26–41–03(11), N.D.C.C., is not applicable to liability portion of a motor vehicle liability insurance policy, but is applicable to ascertaining the situations which trigger no-fault benefits. We conclude that that definition is not applicable to the undisputed facts of this action.

Having concluded that Section 26–41–03(11), N.D.C.C., is not applicable to this case, we must construe the phrase "arises out of the ownership, maintenance, or use of a car or other motor vehicle" as that phrase is used in Dairyland's policy in relation to the undisputed fact that the accident occurred while unloading the truck.

In *Norgaard v. Nodak Mutual Insurance Co.,* 201 N.W.2d 871 (N.D.1972), the insured, Norgaard, was hunting with three companions. Norgaard used the roof of the automobile as a gun rest and discharged his rifle in the direction of some birds. At that instant, Baldock was alighting from the automobile and was struck in the back of the head by a bullet from the rifle. Baldock died from the wound. We held that "the use of the rifle, notwithstanding it rested upon the automobile at the time of its discharge, constituted an independent and intervening cause of the injury and death of" Baldock. *Norgaard, supra,* 201 N.W.2d at 876. We adopted the "causal connection test" between the operation of the motor vehicle and the resulting accident to determine whether the accident was the result of the ownership, maintenance, or use of an automobile. We stated that the use must arise out of the inherent nature of the automobile. In construing "arising out of" we recognized that the causal relationship need not constitute proximate cause; however, we recognized that the causal relationship must not be an independent or intervening cause. See also

---

**3.** Section 26–41–04(1), 26–41–11, and 26–41–14, N.D.C.C.

*Weber v. State Farm Mutual Auto. Insurance Co.*, 284 N.W.2d 299 (N.D.1979); See also, Annot., 15 A.L.R.4th 10 (1982).

■ In this instance, the undisputed facts established that Hagstrom was unloading bales from the truck at the time of the accident and that this use arose out of the inherent nature of the truck. No intervening or independent causes for the accident have been asserted by Dairyland. We believe that these undisputed facts establish, as a matter of law, that the alleged injuries to Sabot arose out of the "ownership, maintenance, or use of the motor vehicle" as that term is used in Dairyland's policy. We conclude that the district court did not err in concluding that Dairyland owed an obligation of coverage and duty to defend Hagstrom under the terms of its policy.

Dairyland contends that the district court erred in concluding that Milbank was not obligated to provide coverage and defense to Hagstrom for Sabot's alleged injuries under the farm owners—ranch owners policy. Milbank's policy with Hagstrom included an endorsement which provided coverage for farm employers' liability and farm employees' medical payments insurance.

The district court concluded as a matter of law that Sabot was a volunteer because he was asked to drive the pickup for the convenience of Hagstrom and he was not asked to assist in unloading or placement of the hay bales. Therefore, the district court concluded that Milbank was not obligated to provide coverage or a defense to Hagstrom under the policy.

Dairyland contends that the district court erred in concluding that Sabot was a volunteer at the time of the accident because there are genuine issues of material fact concerning Sabot's status.

■ In *Olson v. Kem Temple, Ancient Arabic Order of the Mystic Shrine*, 77 N.D. 365, 43 N.W.2d 385 (1950), this Court held that a person who performs services without consideration at the request of another is a gratuitous employee and that Section 34–02–04, N.D.C.C., applies[4] to gratuitous employees. In *Severinson v. Nerby*, 105 N.W.2d 252, 256–257 (N.D. 1960), this Court elaborated on the distinction between a gratuitous employee and a volunteer:

> "A 'volunteer' is one who does, or who on his own initiative undertakes to do, something which he is not legally or morally obligated to do and which is not in pursuance or protection of his own personal interests. A volunteer comes under the rule that one who volunteers to act for another cannot recover for personal injuries as a servant of such other."

The North Dakota cases establish that in order for a person to be a gratuitous employee, the "employer" must have expressly or impliedly requested the employee's help. See *Olson v. Kem Temple, Arabic Order of the Mystic Shrine, supra; Jacobs v. Bever*, 79 N.D. 168, 55 N.W.2d 512 (1952); *Severinson v. Nerby, supra; Anderson v. Meide*, 129 N.W.2d 275 (N.D. 1964); *Schan v. Howard Sober, Inc.*, 216 N.W.2d 793 (N.D.1974).

■ The record reflects a factual question as to the extent of Hagstrom's request for help from Sabot. Sabot was not compensated for helping Hagstrom. However, Sabot was present in the field at the request of Hagstrom to pull Hagstrom's truck out in the event that it became stuck. The record also includes statements from which it may be inferred that Hagstrom asked Sabot to help unload the bales. There is also a disputed factual question as

---

4. Section 34–0204 NDRC 1943 is similar to Section 34–02–04, N.D.C.C. Section 34–02–04, N.D. C.C., provides:

"*34–02–04. Gratuitous employee—Performance and care required.* One who undertakes to do a service for another without consideration is not bound to perform the same unless it is entrusted to him at his own request, in which case he shall perform the service fully. If he commences performance, he shall use at least slight care and diligence therein. Except as otherwise provided in this section, a gratuitous employee may relinquish the employment at any rate."

to who untied the rope on the back of Hagstrom's truck. Although Hagstrom may not have specifically requested Sabot to help unload the bales, Hagstrom did request Sabot to be in the area in the event that the Ford truck become stuck. We believe that these factual circumstances could lead to the inference that Sabot was a gratuitous employee, and we believe that summary judgment was inappropriate on that question. We conclude that the district court erred in granting summary judgment on this issue.

However, we have also said many times that we will not reverse a lower court's decision based on an erroneous principle of law if that decision may be sustained on other grounds. *E.g., County of Stutsman v. State Historical Society of North Dakota,* 371 N.W.2d 321 (N.D.1985).

Milbank contends that even if Sabot is a gratuitous employee there is no coverage under its policy because the farm employers' liability endorsement incorporates all the provisions of the policy not expressly modified therein and its policy provides:

"*This policy does not apply:*

"1. Under Coverage G—Personal Liability and Coverage H—Medical Payments to Others:

a. *to bodily injury or property damage arising out of the* ownership, maintenance, operation, use, *loading or unloading of:*

\* \* \* \* \* \*

(2) any motor vehicle owned or operated by, or rented or loaned to any Insured; but this subdivision (2) does not apply to bodily injury or property damage occurring on the insured premises if the motor vehicle is not subject to motor vehicle registration because it is used exclusively on the insured premises or kept in dead storage on the insured premises; ..." [Emphasis added.]

Thus, Milbank contends that the language of its policy excludes coverage.

 In this instance, it is undisputed that the accident occurred when Hagstrom was unloading the truck. The truck was subject to motor vehicle registration in North Dakota. We believe that the above-cited provision of Milbank's policy unambiguously excludes coverage under the undisputed facts of this case.[5] Summary judgment was, therefore, proper.

For reasons stated in this opinion, the district court judgment is affirmed.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

---

**5.** No reliance has been placed on the doctrine of reasonable expectations which was adopted by two members of this Court in *Mills v. Agrichemical Aviation, Inc.,* 250 N.W.2d 663 (N.D.1977).