Raymond J. JOHNSON, Elna C. Johnson, Richard D. Johnson and Clifford A. Johnson, Plaintiffs and Appellants,

v.

Claud B. HAMILL; Terra Resources, Inc., formerly Farmland International Energy Company; Solar Petroleum, Inc.; Paris-Williston Corporation now doing business as Burgan Resources Corporation; Koch Exploration Company; TXO Production Corporation; Daharavi Investments N.V.; Dover Fiduciary Corporation; and Theo-Davies-Williston, Inc., Defendants and Appellees.

Civ. No. 11072.

Supreme Court of North Dakota.

July 28, 1986.

Michel W. Stefonowicz, Crosby, Jeffrey J. Peterson, Bowbells, and C.B. Thames, Jr., Bismarck, for plaintiffs and appellants; argued by Jeffrey J. Peterson; appearances by Michel W. Stefonowicz and C.B. Thames, Jr.

Fleck, Mather, Strutz & Mayer, Bismarck, for defendants and appellees; argued by Jane Fleck Romanov.

ERICKSTAD, Chief Justice.

The Johnsons (lessors) appealed from a district court judgment dismissing their action against the defendants (hereinafter re-

ferred to as either Terra or the lessees) for cancellation of an oil and gas lease. We affirm.

Raymond and Elna Johnson own the surface and mineral estates in the following land, comprising 678.32 acres in Divide County:

Township 161 North, Range 102 West
Section 19: NW¼
Township 161 North, Range 103 West
Section 24: SE¼SW¼, SW¼SE¼
Section 25: W½NE¼, SE¼NW¼, NW¼ SE¼, N½NW¼
Section 26: NE¼, NW¼SE¼

Richard and Clifford Johnson own one-half of the mineral owner's royalty interest in a part of the above-described property.

On February 9, 1974, the lessors executed an oil and gas lease of the land to Tom A. Schwartz for a primary term of seven years. The lessees are assignees of Schwartz.

No wells have been drilled on the leasehold. The 40 acres located in the S½ of Section 25 (NW¼SE¼), however, are located in a 320–acre spacing unit covering all of the S½ of Section 25, upon which two producing oil wells are located and from which the Johnsons are receiving royalty payments.

In 1980 and 1981, the lessors received offers to lease parts of their land, but the offers did not result in leases because all of the leasehold was held by production from the 40 acres located within the spacing unit on the S½ of Section 25.

By letters of January 5, 1982, to the lessees, the lessors asserted expiration of the primary term of the lease and requested release of the lease except for the NW¼ SE¼ of Section 25. On February 3, 1982, the lessors served upon the lessees notice, pursuant to § 47–16–36, N.D.C.C., that the lease (except for the NW¼SE¼ in Section 25) "has terminated or become forfeited by breach of the terms hereof" and demanded a surrender of the lease. The lessees responded as required by statute. By letters of June 7, 1982, the lessors demanded of the lessees "that you comply with the im-

plied covenant to further develop the balance of the property not included in the production unit. In the alternative, please release the property not included in the production unit."

By summons and complaint filed in the district court on January 25, 1983, the lessors sought a judgment decreeing "that the lease has terminated as to those portions of the leased property lying outside the existing governmental spacing unit," or, in the alternative, decreeing "that Defendants comply with the duties to reasonably develop and further explore the leased property within a time set by the Court or file a release of record." The complaint was later amended to seek damages for oil and gas alleged to have been lost by drainage.

The trial court found that "[n]o substantial drainage, if any at all, has occurred or is occurring"; that Terra has conducted itself as a prudent operator; and that "[t]here has been no breach by the defendants of any implied covenant to develop, explore or protect the Johnson lease." The lessors have appealed from the judgment dismissing their complaint and amended complaint. They have raised the following issues, which relate only to the implied covenants and not to the matter of drainage:

"1. Should the District Court have found that the implied covenant to reasonably develop and/or the implied covenant to further explore the mineral acreage described in the oil and gas lease dated February 9, 1974, was not complied with.

"2. Should the District Court Judgment have provided for a forfeiture of the acreage described in the oil and gas lease or in the alternative provided for a forfeiture of that acreage outside of the established spacing unit or a portion of the acreage outside of the spacing unit."

Essentially, the lessors allege that the lessees have breached implied covenants because of a lack of development or exploration and seek either the drilling of a well or forfeiture of the lease. The lessees allege that they have acted as a prudent

operator in not yet drilling; that they have explored; and that they wish to and are entitled to retain the lease while, as a prudent operator, they await further developments in nearby wells.

■ Development and exploration are not carried out only by drilling operations. They are also performed by such other activities as geophysical surveys and farm-out operations [*Felmont Oil Corp. v. Pan American Petroleum Corp.*, 334 S.W.2d 449 (Tex.Civ.App.1960)]; efforts to gather geological information [*Dupree v. Relco Exploration Co., Inc.*, 354 So.2d 1083 (La. App.1978)]; and "participation in the preliminary play to an eventual deep test in the area" [*Frazier v. Justiss Mears Oil Co., Inc.*, 391 So.2d 485, 488 (La.App. 1980)]. *See also* 5 H. Williams and C. Meyers, Oil and Gas, Law § 843.8 (1985).

A lessee must "prosecute drilling operations with reasonable diligence" [*Hermon Hanson Oil Syndicate v. Bentz*, 77 N.D. 20, 40 N.W.2d 304, 308 (1949)], "having regard to the interests of both lessor and lessee" [*Brewster v. Lanyon Zinc Co.*, 140 F. 801, 814 (8th Cir.1905)]. In *Olson v. Schwartz*, 345 N.W.2d 33, 38 (N.D.1984), we stated:

"It is well settled that the lessee of an oil and gas lease has an implied obligation to the lessor to do everything that a reasonably prudent operator would do in operating, developing, and protecting the property, with due consideration being given to the interests of both the lessor and the lessee, if there is no express clause in the lease relieving the lessee of this implied duty. *Feland v. Placid Oil Co.*, 171 N.W.2d 829, 835 (N.D.1969). *See also* 38 Am.Jur.2d *Gas and Oil* § 127, page 601."

■ While a lessee may consider its own interests in operating, developing, and protecting a leasehold, Terra's assertion that a

prudent operator is only required to drill when it would be profitable to do so goes too far. Relying on *Doss Oil Royalty Co. v. Texas Co.*, 192 Okla. 359, 137 P.2d 934 (1943), we held in *Olson v. Schwartz, supra*, that a lessor may be entitled to relief upon a theory of breach of the implied covenant of reasonable development[1] where a long period of time passes without drilling on substantial unexplored portions of a leasehold held by production on part of the leasehold without proving that a well on the undeveloped portion would be profitable. *See also Sauder v. Mid-Continent Petroleum Corp.*, 292 U.S. 272, 54 S.Ct. 671, 78 L.Ed. 1255 (1934); *Sinclair Oil & Gas Co. v. Masterson*, 271 F.2d 310 (5th Cir.1959); *Texas Consolidated Oils v. Vann*, 208 Okla. 673, 258 P.2d 679 (1953); 5 H. Williams and C. Meyers, Oil and Gas Law §§ 806.3, 841–847 (1985).

In *Olson v. Schwartz, supra*, 345 N.W.2d at 39, we stated that:

"... the question of whether or not there has been reasonable development of a leasehold is determined by reference to the 'prudent operator' standard. It is impossible to state a formula by which a court can determine whether a particular lessee has developed a particular lease in conformity with the prudent operator standard. Each case must be decided on the facts peculiar to it and the burden of proving a breach of the implied covenant is on the party asserting it."

We also set forth, at 345 N.W.2d 39–40, a nonexclusive list of factors to be considered in applying the prudent-operator standard:

"(1) the quantity of oil and gas capable of being produced as indicated by prior exploration and development; (2) the local market and demand therefor; (3) the extent and results of the operations, if any, on adjacent lands; (4) the character of the natural reservoir—whether such as to permit the drainage of a large area

---

**1.** With regard to exploration, as distinguished from further development of a producing formation, the lessors have suggested that we adopt a separate covenant of further exploration. *See* 5 H. Williams and C. Meyers, Oil and Gas Law §§ 841–847 (1985). The lessors have also stated

that the covenant of reasonable development is sufficiently broad to encompass the factual situation presented. Under the circumstances presented in this case, we deem it unnecessary to determine whether or not we should adopt a separate covenant of further exploration.

by each well; (5) the usages of the business; (6) the cost of drilling, equipment, and operation of wells; (7) the cost of transportation, storage, and the prevailing price ... (8) general market conditions as influenced by supply and demand or by regulation of production through governmental agencies ... (9) evidence of the willingness of another operator to drill on the tract in question; (10) the attitude of the lessee toward further development; and (11) the elapsed time since drilling operations were last conducted." [Citations omitted.]

■ A lessor alleging breach of implied covenants is not entitled to forfeiture of a lease until he has notified the lessee of the breach, demanded that the terms of the implied covenant be complied with within a reasonable time, and given the lessee a reasonable time for such compliance. *Olson v. Schwartz, supra.* In this case, the lessors first demanded compliance with the implied covenants on June 7, 1982, although they had previously requested release of the lease and had previously asserted that the lease was forfeited. The lessors brought suit for cancellation in January 1983.

The lessees have asserted that our review is governed by Rule 52(a), N.D.R. Civ.P. The lessors have asserted: (1) that the trial court's decision is based on an erroneous conception of the law of implied covenants; (2) that the question of what a prudent operator should do is one of law; and (3) that if the clearly erroneous standard of review is applicable, the trial court's findings are clearly erroneous.

There is nothing in the record before us indicating that the trial court's findings and decision were based on an erroneous conception of the law. Thus, we must determine if the issues to be resolved are questions of law or fact.

"[T]he question of whether or not there has been reasonable development of a leasehold is determined by reference to the 'prudent operator' standard." *Olson v. Schwartz, supra,* 345 N.W.2d at 39. 5 H.

Williams and C. Meyers, Oil and Gas Law § 806.3, p. 42 (1985), defines the prudent operator and analogizes to the reasonable man:

"In summary, the prudent-operator standard has the same function in oil and gas litigation as the reasonable man standard has in negligence litigation.

"[Prudent-operator standard defined]

"This analogy to the reasonable man of tort law also helps to explain the meaning of the prudent-operator standard. The prudent operator is a reasonable man engaged in oil and gas operations. He is a hypothetical oil operator who does what he ought to do not what he ought not to do with respect to operations on the leasehold. Since the standard of conduct is objective, a defendant cannot justify his act or omission on personal grounds or by reference to his peculiar circumstances. It is no excuse that defendant failed to drill the offset well a prudent operator would have drilled because defendant is short of cash, over-committed on drilling programs, has no need for more production, or prefers to spend *his* money on *other* things. In short, the question is not what was meet and proper for *this* defendant to do, given his peculiar circumstances, but what a hypothetical operator acting reasonably would have done, given circumstances generally obtained in the locality." [Footnotes omitted.]

■ Whether or not one's conduct has met the standard of the reasonable man is a question of fact. *Johnson v. American Motors Corp.,* 225 N.W.2d 57 (N.D.1974). Because the prudent-operator standard serves the same function in oil and gas litigation as the reasonable-man standard in negligence litigation, the question of whether or not one's conduct has met the standard of the prudent operator is also a question of fact. Thus, whether or not Terra has met the standard of the prudent operator and whether or not Terra has breached its implied covenant of reasonable development of the leasehold are questions

of fact and the trial court's findings on those matters are subject to the clearly erroneous standard of Rule 52(a), N.D.R. Civ.P.

Our review of factual matters tried to the court was summarized in *Byron v. Gerring Industries, Inc.*, 328 N.W.2d 819, 821–22 (N.D.1982):

"The legal principles governing Rule 52(a)'s application are not in dispute and thus can be briefly summarized. A finding is clearly erroneous only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. That we may have viewed the facts differently if we had been the initial trier of the case does not entitle us to reverse the lower court. Our function is not to decide factual issues de novo.

"The complaining party bears the burden of demonstrating that error exists in the trial court's findings of fact. The burden assumed by the party attempting to show such mistake is especially strong where, as in this instance, the findings are primarily based upon oral testimony and the trial judge has viewed the demeanor and judged the credibility of the witnesses. The rule that questions of credibility are for the trial court also applies to the evaluation of expert witness testimony." [Citations omitted.]

Faced with conflicting opinions by expert witnesses for the parties, the trial court found "more persuasive, credible, and quite convincing the opinion testimony" of Terra's experts. This situation is similar to that in *Byron v. Gerring Industries, Inc., supra*, 328 N.W.2d at 822:

"The trial court was thus confronted with a classic 'battle of the experts'. Consequently, this is a case where the court could have arguably relied upon either party's expert witness. However, upon hearing the testimony, observing the witnesses' demeanor, and judging their credibility, the court chose to rely upon the defendants' expert. Such a choice between two permissible views of the weight of the evidence is not clearly erroneous." [Citations omitted.]

The trial court found, among other things: (1) that the Johnson lease was held by production from two wells completed in the S½ of Section 25 in October 1978 and July 1979; (2) that Terra participated in the drilling of those two wells through a farm-out agreement; (3) that Terra granted a seismic option on portions of the Johnson lease to Patrick Petroleum Company, which conducted seismic operations but did not exercise the option by farming-in any of the Johnson lease and Terra later negotiated a farm-out agreement with another company, which did not farm-in any of the land by drilling a well; (4) that "there is no closure nor structure in the N½ of Section 25 productive of oil and/or gas from the Red River formation;" (5) that a prudent operator would not have drilled a development or exploratory well on the Johnson lease; (6) that Terra has conducted itself as a prudent operator; (7) that Terra has demonstrated interest in continuing to develop and explore the Johnson lease in other formations and is acting as a prudent operator with respect to such development and exploration; and (8) that Terra has not breached "any implied covenant to develop, explore or protect the Johnson lease."[2]

There was expert testimony that there is no productive potential from the Red River formation anywhere on the Johnson lease, except for the S½ of Section 25, and that a "prudent operator could not reasonably attempt to exploit additional reserves from the Red River zone in the N½ of Sec. 25." Terra negotiated a seismic option covering the Johnson lease in 1979. Terra negotiated a farm-out of a portion of the lease in 1983. Terra did a regional seismic study in

**2.** While the findings with regard to breach of the implied covenants at issue and the prudent-operator standard are somewhat sparse and conclusory, they are adequate for purposes of review, although more detailed findings would have aided the process of judicial review. It should be noted, also, that the thrust of the trial was directed at the issue of drainage, about which no issues have been raised on appeal.

Divide County on or close to the Johnson leasehold in 1982. Terra's geologic staff evaluates the Johnson lease at least once a year to determine what further development should occur.

There are nearby wells producing in the Red River formation which have shown the potential for production in shallower formations. There was testimony that the normal industry practice is to complete in the lower zones first and as those are depleted move up hole and test each additional zone. Terra's witnesses testified that some of the nearby wells are at or near their economic limit in the Red River formation and presumably those operators would soon move up hole to production test shallower intervals. They also testified that most of those wells should be recompleted up hole within two years and that "at the outside you need approximately four years" for those recompletions to occur, to study the production data, complete geologic studies, and actually engage in a development program. Terra's witnesses testified that a prudent operator would not drill to those shallower zones without receiving production data from those zones tested by a currently producing well. A Terra reservoir engineer testified that as to shallower zones in nearby wells:

"... I am very interested in watching the results of what happened with the other wells in the field here that have potential. If we had one well at least open up to find out what kind of size of reservoir might be, that would definitely improve the probability of a successful well.

"... If you look at it that there has been nine wells drilled and only one economic producer. One out of nine, I would be very leery. I would like to see somebody try one of those other zones. And I think two years is a reasonable time, and to watch and see what happens when they open it up."

■ In our view, considering the relevant factors stated in *Olson v. Schwartz, supra,* there is sufficient evidence to support the trial court's findings that Terra

has acted as a prudent operator and has not breached any implied covenants relating to development or exploration. Based on geologic information reasonably available to it and the production data from nearby wells, Terra has met the prudent operator standard in not drilling a well either to further develop the Red River formation or to explore potentially productive shallower zones. This is especially so because only one of the wells drilled in the area was a good producer, several were dry holes, and the others were marginal producers.

Counsel for the Johnsons, in concluding comments to the trial court, stated:

"Your honor, I think probably the most important thing is the passage of time in this matter. Mr. and Mrs. Johnson and their family have not seen any activity on their leasehold since February 9 of 1981, which has been the term—primary term of the lease.

"As far as that goes, they haven't seen any activity on their lease even during the term of that lease."

We have already noted that there has been substantial development and exploration activity in the form of seismic options, farm-out agreements, study of geologic data, seismic testing, study of production data from nearby wells, and actual production, both during the primary term of the lease and after the expiration of the primary term. Terra has even engaged in some of those activities after the Johnsons began to assert that the lease had been forfeited. It has been stated in 5 H. Williams and C. Meyers, Oil and Gas Law § 808, pp. 52–53 (1985):

"Acts by the lessor that justify the suspension of operations by lessee and excuse his performance of implied covenants include:

\*    \*    \*    \*    \*    \*

"(2) declaration by lessor that the lease has terminated, has been forfeited, or cancelled;

\*    \*    \*    \*    \*    \*

(4) filing of suit to cancel, forfeit, or declare the lease terminated."

In our view, the time that had passed without the drilling of a well, in view of the other development and exploration activities engaged in by Terra and the information available to it, was insufficient to compel a forfeiture of the lease. We conclude from our review of the record that there is substantial evidence to support the trial court's findings of fact. We have not been left with a definite and firm conviction that a mistake has been made, and the trial court's findings are, therefore, not clearly erroneous.

While we affirm the judgment entered in the district court, we caution that Terra should not read its victory today too broadly. We deem appropriate the following comments in *Shell Oil Co. v. Howell*, 208 Okla. 598, 258 P.2d 661, 665 (1953):

"We merely hold that the failure of this lessee to drill during the period and under the circumstances shown here was not ground for cancellation of the lease at the time of the trial. And we may add ... that such delay as was here shown, may not continue until it becomes unreasonable or unconscionable and thus grow into valid ground for cancellation of the lease at some time in the future. As a corollary, it follows that our decision herein should not be interpreted as licensing the defendant to do nothing in the near future toward further development of the lease."

For the reasons stated, the judgment is affirmed.

LEVINE, MESCHKE and VANDE WALLE, JJ., and HODNY, District Judge, concur.

HODNY, District Judge, sitting in place of GIERKE, J., disqualified.

MESCHKE, Justice, concurring.

I concur in the well-reasoned opinion of Chief Justice Erickstad.

The concept of a "prudent operator," as a standard of decision in determining a breach of an implied covenant in an oil and gas lease, may be unduly emphasized in the scant findings of the trial court, and therefore perhaps in the opinion of the Chief Justice, as well. No doubt a standard of reasonableness is appropriate, but "with due consideration being given to the interests of both the lessor and the lessee." *Olson v. Schwartz*, 345 N.W.2d 33, at 38 (N.D.1984). It is not the operator's (lessee's) prudent interests alone at stake.

In my view, what other operators would do in like circumstances is only one of the factors involved in weighing the reasonableness of the conduct of the lessee. As long as we do not lose sight of the importance of the lessor's prudent interests, which are certainly involved in reasonableness as well, there may be no harm done in characterizing it as a "reasonably prudent operator" standard. But, I am concerned that the label may unduly focus our attention on only one side of the scale—the lessee's.

In this case, I do not see that it makes a difference. The trial court concluded that "[t]here has been no breach by the defendants of any implied covenant to develop, explore or protect the Johnson lease," and there was evidence to support that view.

The trial court relied significantly on evidence of exploration activities other than drilling operations to justify the lack of development here and the opinion of the Chief Justice recognizes some merit in that. It is appropriate in this case to justify the seven months between demand for development in June, 1982 and the commencement of this action in January, 1983. But, generally exploration activity short of drilling cannot hold a lease indefinitely, only temporarily, as in this case. See 5 H. Williams and C. Meyers, *Oil and Gas Law* § 843.8 (1985). Thus, the concluding caution quoted by the Chief Justice is fitting:

"... [O]ur decision herein should not be interpreted as licensing the defendant to do nothing in the near future toward further development of the lease."