STATE of North Dakota ex rel. the INDUSTRIAL COMMISSION and the Board of University and School Lands, Plaintiff and Appellee,

v.

Lee HARLAN, individually and d/b/a Harmac Oil, Jet Oilfield Equipment Rental and Service, Inc., WellPro, Inc., and Williston Industrial Supply Corp., a/k/a WISCO, Defendants,

and

Crestone Energy Corporation and Walter E. Johnson, Defendants and Appellants.

Civ. No. 11371.

Supreme Court of North Dakota.

Sept. 29, 1987.

Illona A. Jeffcoat-Sacco, Asst. Atty. Gen., Bismarck, for plaintiff and appellee State of N.D.

Richard A. McKennett, of Rolfstad, Winkjer, McKennett & Stenehjem, P.C., Williston, for defendants and appellants.

VANDE WALLE, Justice.

The question presented by this case is whether the court below erred in granting summary judgment. We hold that the court below did err, and we reverse.

The State of North Dakota owns a 50-percent interest in a parcel of land located in McKenzie County, North Dakota. This mineral interest is managed by the Board of University and School Lands (hereinafter Board).

On February 9, 1982, the Board entered into an oil and gas lease with Crestone Energy Corporation (hereinafter Crestone) and Walter E. Johnson whereby each of the latter leased 50 percent of the State's mineral interest. One section of this lease provided:

> "13. This lease shall be subject to all rules and regulations of the Board of University and School Lands in effect on the date of this lease; such rules and regulations are herein incorporated by reference. If lessee shall fail or refuse to make the payment of any sum due under the lease or if any of the terms of this lease shall be violated, this lease may be cancelled by lessor in accordance with such rules."

On June 7, 1985, Crestone and Johnson assigned the lease to Lee Harlan. This assignment was not approved by the Board.

Drilling subsequently commenced on the property in question by the re-entry of a previously operated well. However, no permit for drilling had been obtained, nor had a bond been submitted, as required by Section 38–08–05, N.D.C.C.

In July of 1985 the Industrial Commission became aware of the illegal entry. It then sought a temporary restraining order and a preliminary injunction against Lee Harlan, Jet Oilfield Equipment Rental and Service, Inc., WellPro, Inc., and Williston Industrial Support Corp. The temporary restraining order and the preliminary injunction were granted.

In February 1986 the Industrial Commission moved to amend its complaint—adding the Board as a plaintiff and adding Crestone and Johnson as defendants.[1] The

---

1. It has not been argued that the Board should have been added as a defendant rather than a plaintiff. Although we have referred to the Industrial Commission and the Board of University and School Lands as the State, it is clear that the two agencies represent different interests, i.e., the Industrial Commission is the "regulator" of the oil and gas conservation statutes (see Chapter 38–08, N.D.C.C.), whereas the Board is a lessor of a mineral interest (see Section 38–11–02.1, N.D.C.C.). It is evident that at least since July 16, 1987, a royalty owner, such as the

amended complaint asked, on behalf of the Industrial Commission as regulator, that operator Lee Harlan be required to plug the well and reclaim the surface.[2] The Board, as lessor of a fractional interest in the property, asked that Crestone and Johnson be held jointly and severally liable for the cost of plugging and reclaiming the surface under theories of contract and tort.

Subsequently, Crestone and Johnson moved for summary judgment. The State responded by also moving for summary judgment. The trial court entered its judgment denying the motion for summary judgment made by Crestone and Johnson and awarding summary judgment to the State. Crestone and Johnson, with new counsel, now appeal from that judgment.

## I

Initially we are faced with two issues raised by Crestone and Johnson which do not appear to have been raised in the court below. Crestone and Johnson argue that if they are found liable, they should be liable for only 50 percent of the costs because they leased only 50 percent of the total mineral interest; Crestone and Johnson also argue that the State may not claim the assignment to Harlan was invalid because the State accepted delay rentals from Harlan. Nowhere in the briefs accompanying the motions for summary judgment below do we see that these arguments were made. Because these issues were not properly addressed to the court below, they are not reviewable on appeal. As we have stated previously, "Issues not presented to the trial court cannot be considered for the first time on appeal." *Farmers State Bank of Leeds v. Thompson*, 372 N.W.2d 862, 865 n. 3 (N.D.1985).

## II

The basic issue, as we have noted, is whether the court below properly granted summary judgment. Rule 56(c) of the North Dakota Rules of Civil Procedure pro-

vides the standard by which determinations of summary-judgment motions are to be made. That rule states:

"... Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."

Under this standard, summary judgment:

"is a procedural device available for the prompt and expeditious disposition of a controversy without a trial if there is no dispute as to either the material facts or the inferences to be drawn from the undisputed facts, or if only a question of law is involved." *Milbank Mut. Ins. Co. v. Dairyland Ins. Co.*, 373 N.W.2d 888, 890 (N.D.1985), citing *Herman v. Magnuson*, 277 N.W.2d 445 (N.D.1979).

In this case both of the opposing sides moved for summary judgment. However, "The mere fact that both parties have moved for summary judgment does not establish that there is no material issue of fact to be determined," or that no dispute as to the inferences to be drawn therefrom exists. *Biby v. Union National Bank of Minot*, 162 N.W.2d 370, 373 (N.D.1968). Therefore, we must look to the substance of the motions for summary judgment to determine whether summary judgment was properly granted.

In moving for summary judgment the State relied on theories of contract and tort. In granting the State's motion the court below did not indicate which theory it was relying on, or if it was relying on more than one. Therefore, we consider both theories.

The rationale for the State's contractual theory of liability is that Crestone and Johnson are liable for plugging damages because they breached the covenant to abide by Board rules and regulations when

---

Board, cannot be held liable by the Commission for the reasonable expenses incurred in the plugging or replugging of the well. See Section 38–08–04.8, N.D.C.C.

**2.** Although Harlan remains a party to this litigation he has never made an appearance, and he is not an appellant at this time.

they assigned the lease without getting Board approval. Section 15–05–15, N.D. C.C., requires Board approval of an assignment of mineral interests leased by the State.[3] This statute is implemented by Rule 85–06–06–07 of the Board's rules. That rule provides, in part, "Upon payment of the then current assignment fee and upon approval of an assignment by the board, lessee shall be relieved of all obligations with respect to assigned portions." Crestone and Johnson admit that Board approval was not sought prior to their assignment to Harlan. Thus it does appear that a breach of contract occurred.

■ However, the fact that a breach of contract occurred does not necessarily mean that Crestone and Johnson are liable for the plugging of the well. A person is liable for only those damages which were proximately caused by his breach of contract, and which were reasonably foreseeable. See *Vallejo v. Jamestown College*, 244 N.W.2d 753 (N.D.1976). Issues of proximate cause and foreseeability involve inferences to be drawn from the facts, thus making summary judgment inappropriate. As we stated in *Vallejo*, 244 N.W.2d at 759, where questions of damages are involved there "is no certain or definite rule by which the amount of damages can be measured, and each case must be determined on its merits. This determination is in the province of the jury and the matter of damages rests largely in the sound discretion of the jury." Thus, if summary judgment was granted on the basis of breach of contract, it was inappropriately granted.

■ A second basis relied upon by the State in seeking summary judgment was a theory arguing that Crestone and Johnson had violated a duty to operate a well with the reasonable diligence of a reasonable and prudent operator. The State argued that this was both a breach of an implied covenant to act as a reasonable and prudent operator, and that it was negligence. What a reasonable and prudent operator

would do is a question of fact. As we have stated previously, "Because the prudent-operator standard serves the same function in oil and gas litigation as the reasonableman standard in negligence litigation, the question of whether or not one's conduct has met the standard of the prudent operator is also a question of fact." *Johnson v. Hamill*, 392 N.W.2d 55, 58 (N.D.1986). Thus use of a reasonable-and-prudent-operator standard raises a question of fact, making summary judgment inappropriate.

■ The State also argued in the court below that various statutory violations constituted negligence per se, and that Crestone and Johnson therefore were strictly liable for the consequences of such violations. This is an incorrect interpretation of the negligence-per se doctrine. In North Dakota violation of a statutory duty is not negligence per se; it is only evidence of negligence. See *Glatt v. Feist*, 156 N.W.2d 819 (N.D.1968), and *Keyes v. Amundson*, 391 N.W.2d 602 (N.D.1986). Thus violation of a statute does not establish negligence. Therefore, the State's argument could not support a summary judgment.

Because there are issues of fact to be determined under the theories the State argued to the court below in seeking summary judgment, we reverse the summary judgment.

ERICKSTAD, C.J., and LEVINE, GIERKE and MESCHKE, JJ., concur.

---

3. This statute was part of the State's contract with Crestone and Johnson. As we stated in *Schue v. Jacoby*, 162 N.W.2d 377, 382 (N.D. 1968): "Existing law at the time a contract is entered into, covering the subject-matter of a contract, becomes a part of such contract and must be read into it as if its provisions were set out in full in the instrument itself."